[Civ. No. 2307. Fourth Appellate District.—March 28, 1939.]

D. P. TAYLOR, Appellant, v. BOARD OF EDUCATION OF THE CITY OF SAN DIEGO (a Municipal Corporation), Respondent.

Stearns, Luce, Forward & Swing and Albert J. Lee for Appellant.

James B. Abbey, District Attorney, and Bertram McLees, Jr., Deputy District Attorney, for Respondent.

GRIFFIN, J.—Petitioner and appellant was 65 years of age prior to May 1, 1938. He was first elected to teach in the San Diego City High School August 23, 1918, without limitation as to time of service and has continuously served as a teacher of mathematics in said high school ever since his first election. At the time of his first election he held a valid certificate issued by the San Diego County Board of Education entitling him to teach in secondary schools and in 1922 his certificate never having been revoked, he was issued a life diploma.

High schools have been secondary schools of the State of California since prior to 1918, and for that period of time the San Diego City High School District has been governed by a city board of education and has had a personnel which has caused appellant to be classified as a permanent employee of the San Diego City High School District (now the San Diego Unified School District) since the tenure provisions of the school law were incorporated into section 1609 of the Political Code by amendment in 1921.

The city of San Diego was a city of the second and one-half class in 1918, and a city of the second and one-fourth class in 1921 (Classification Act, Stats. 1883, p. 24, as amended by Stats. 1911, p. 476, and Stats. 1921, p. 1654; Deering's Gen. Laws, Act 5151.)

Deductions have been made from appellant's salary as a teacher of the San Diego City High School in accordance with the Teachers' Retirement Law of 1913 (Stats. 1913, p. 1423) ever since he was first employed in that school.

Appellant was elected to serve as *a half-time certified employee without tenure classification* in the secondary schools of the San Diego Unified School District of San Diego County, California, for the school year of July, 1938, to June, 1939. No attempt has been made to terminate, suspend or reduce his employment for cause. His reduction to half-time service and the termination of his tenure classification has been undertaken pursuant to the provisions of section 5.505 of the School Code. There are no provisions of the charter of the city of San Diego providing for the age of retirement of certificated employees of the San Diego Unified School District.

On filing the petition for writ of mandate, the parties stipulated that the ruling on the demurrer to be filed by respondent should be followed by a judgment granting the peremptory writ without filing an answer if the ruling was favorable to appellant, or vacating the alternative writ and dismissing the action without leave to amend the complaint if the ruling was in favor of respondent. It was further stipulated that an appeal might be immediately perfected and that the record on appeal should consist of the stipulation, the amended petition, the alternative writ, the demurrer on file, and the judgment of the court sustaining the demurrer dismissing the petition and discharging the alternative writ. In accordance with the stipulation the respondent Board of Education of the San Diego Unified School District demurred to the petition on the ground that the petition did not state facts sufficient to constitute a cause of action. The court entered judgment as follows:

"The demurrer herein having been presented to the court under a stipulation that the petition as amended contains a correct statement of facts and that the ruling of the court on said demurrer would be determinative of the issuance of the peremptory writ prayed for in said complaint, argument on said demurrer having considered the constitutionality of section 5.505 of the School Code in terminating the tenure status of permanent certified employees of school districts of the age of 65 years with particular reference to the rights of such em-

ployees under provisions of section 10, article I, of the Constitution of the United States and section 16 of article I of the Constitution of the State of California, the court having been fully advised in the premises and having concluded that said section 5.505 of the School Code terminating the tenure status of petitioner as a permanent certified employee of the San Diego Unified School District of San Diego County, California, was constitutional;

''It is therefore ordered, adjudged and decreed that the demurrer of respondent to petitioner's amended petition be and the same is hereby sustained without leave to amend; that the petitioner take nothing by this action; that the issuance of a peremptory writ of mandate in the above proceeding be and the same is hereby denied; and that the alternative writ of mandate heretofore issued be and the same is hereby discharged.''

From this judgment appellant has perfected this appeal. The question may be thus stated: Does section 5.505 of the School Code, effective September 1, 1937, terminating the permanent tenure of teachers, reaching the age of 65 years violate any of the provisions of the Constitution of the State of California or the Constitution of the United States? Section 5.505 of the School Code provides as follows:

''Excepting in districts situated within, partly within, or coterminous with the boundaries of a city, or city and county, where the charter, if any, of such city, or city and county provides an age at which employees including certificated employees of such districts, shall be retired, when a permanent employee reaches the age of sixty-five years, or if a permanent employee has reached the age of sixty-five years, the permanent classification of such employee shall cease and thereafter employment shall be from year to year at the discretion of the governing board; provided that any certificated employee who is not reemployed under the provisions of this section, and who has not completed the requirements for full retirement salary, shall be deemed to have been retired on account of physical disability within the meaning of the provisions of this code relating to retirement of certificated employees of school districts. Provided that the effective date of this section shall be September 1, 1937.''

It is to be noted that the legislature (Stats. 1937, p. 153) enacted a plan or method for adopting a pension and retirement system in the school districts throughout the state (sec. 5.1100 of the School Code), anticipating the effective date of section 5.505. (*Davis* v. *County of Los Angeles,* 12 Cal. (2d) 412 [84 Pac. (2d) 1034].)

It is the contention of appellant that section 5.505 above quoted impairs the obligation of his contract for permanent tenure and also deprives him of vested rights of permanent tenure, in violation of section 16, article I, of the Constitution of the State of California, and in violation of section 10 of article I of the Constitution of the United States.

Appellant, in support of his contention, insists that at the time of the enactment of section 5.505 of the School Code the status of petitioner was that of an "employee" and that the terms of the employment were fixed by contract, citing *Leymel* v. *Johnson,* 105 Cal. App. 694 [288 Pac. 858]; *Martin* v. *Fisher,* 108 Cal. App. 34 [291 Pac. 276]; *Anderson* v. *Board of Education,* 126 Cal. App. 514 [15 Pac. (2d) 774, 16 Pac. (2d) 272]; *Cullen* v. *Board of Education,* 126 Cal. App. 510 [15 Pac. (2d) 227, 16 Pac. (2d) 272], and claims that once such relationship existed, the law then in effect would enter into the contract and form a part of it, and accordingly the extent and limitations of the obligation of the contract must depend on the law out of which it arose, citing *Flagg* v. *Sloane,* 135 Cal. App. 334 [26 Pac. (2d) 874]; *Robinson* v. *Magee,* 9 Cal. 81 [70 Am. Dec. 638]; *Rosenberg* v. *Janssen,* 11 Cal. App. (2d) 15 [52 Pac. (2d) 952, 54 Pac. (2d) 721]; *Los Angeles Flood Control Dist.* v. *Wright,* 213 Cal. 335 [2 Pac. (2d) 168]. In *Abraham* v. *Sims,* 2 Cal. (2d) 698 [42 Pac. (2d) 1029], this language is found:

"The result of these enactments was not to make the relation any the less one originating in contract, but to annex to contracts of employment when repeated for a sufficient time certain legal consequences. These consequences are not contractual except in the broad sense of being annexed by operation of law to the contract and have been said to be 'in the nature of a civil service regulation'."

Appellant relies on the case of *Lotts* v. *Board of Park Commrs.,* 13 Cal. App. (2d) 625 [57 Pac. (2d) 215], in support of his assertion that if appellant has by reason of the

infirmities of age or otherwise become inefficient or incapable of performing his usual duties as a teacher, his removal may be accomplished pursuant to the provisions of his contract and the statutory provisions annexed thereto and forming a part thereof, but to terminate his tenure on the ground of age alone without a hearing as to his evident fitness is to act arbitrarily and "to vitiate and destroy every semblance of protection intended to be afforded by the spirit of" the teachers' tenure laws.

Section 5.505 of the School Code, added by the Statutes of 1935, page 1881, effective September 1, 1937, was enacted after the appellant in this case had acquired permanent tenure and retirement rights by operation of law and he claims for that reason that it would in no way affect his vested right to the enjoyment of that status. (*Gastineau* v. *Meyer*, 131 Cal. App. 611 [22 Pac. (2d) 31]; *Klein* v. *Board of Education*, 1 Cal. (2d) 706 [37 Pac. (2d) 74].) As a part of the enactment referring to the teachers' tenure laws this provision is found:

"Sec. 5.504. Nothing in this article shall be construed as affecting any permanent employee classified as such at the time this section takes effect nor shall any decrease in the average daily attendance of any school district operate to deprive any permanent employee of the district of his classification as such."

The purpose of this section is fully discussed in *Chambers* v. *Davis*, 131 Cal. App. 500 [22 Pac. (2d) 27], and has no particular bearing upon the facts in this case.

Appellant further claims that by reducing the services of appellant to half time without his consent is equivalent to dismissal, and therefore the offer of employment for half time at half his salary does not avoid the consequence of termination of tenure, citing *Crawford* v. *Board of Education*, 20 Cal. App. (2d) 391 [67 Pac. (2d) 348].

Respondent, in answer to appellant's contentions, claims that the contract of employment referred to created a "three-sided relationship". A teacher does not ordinarily have a contract of employment with the State of California but with the school district where he is employed. As stated in the case of *Leymel* v. *Johnson, supra*:

"The contract of employment of a teacher produces the relation of employer and employee, the first, the board of education, and the second, the teacher . . . Of course the powers of the board are limited by statutes, but does this fact alone render this employment under the state? We think not. . . . The statutes governing the employment, duties and privileges of the teacher are rules of contract and regulation defining the duties, privileges and obligations of the profession."

The teacher has all the powers of making employment contracts with the school district that many persons in private employment have, but the state does have an interest in the teacher's contract of employment. School districts are political subdivisions of the state and all children resident in the state may take advantage thereof. Consequently, the state has surrounded the contract of employment of the school district and the teacher with many more statutory restrictions and privileges than is true of most contracts.

Section 1793 of the Political Code, as amended in 1911, contained these provisions:

"The holders of city, or city and county, certificates are eligible to teach in cities, or cities and counties in which such certificates were granted, in schools or classes of grades corresponding to the grades of such certificates, and when elected shall be dismissed only for insubordination or other causes, as mentioned in section 1791 of this code, duly ascertained and approved by the boards of education of such cities, or cities and counties. . . .

"The holders of special city, or city and county, certificates are eligible to teach the special branches mentioned in their certificates, in the grades of all the schools in the city, or city and county, in which such certificates were granted, corresponding to the grade of said special certificates, and when elected, or assigned, shall be dismissed or removed only for insubordination or other causes, . . . "

These provisions have been construed in *Kennedy* v. *Board of Education*, 82 Cal. 483 [22 Pac. 1042]. The court there held that a teacher elected by a city board of education without limitation as to time, was entitled to hold the position while competent and faithful, and could only be dismissed for violation of the rules of the board of education, or for in-

competency, or for unprofessional or immoral conduct. This holding was subsequently followed in *Fairchild* v. *Board of Education,* 107 Cal. 92 [40 Pac. 26], and *Klein* v. *Board of Education, supra.* This rule has been discussed and held inapplicable under the facts related in *Marion* v. *Board of Education,* 97 Cal. 606 [32 Pac. 643, 20 L. R. A. 197], *Stockton* v. *Board of Education,* 145 Cal. 246 [78 Pac. 730], *Barthel* v. *Board of Education,* 153 Cal. 376 [95 Pac. 892], and *Bradley* v. *Board of Education,* 1 Cal. App. 212 [81 Pac. 1036], in which the holder of a *special* city certificate was held not within the rule of the Kennedy case, thereby confining the rule to holders of *general* certificates only.

In *Loehr* v. *Board of Education,* 12 Cal. App. 671 [108 Pac. 325], it is stated:

"Section 1793 (Political Code) confers the right of indefinite employment . . . this right is conferred only as an incident to the holding of a city certificate as distinguished from a county, state or special certificate."

Thus the rule of the Kennedy case has developed two definite conditions: first, it applies only to those teachers holding general city certificates issued after an examination by a city board of examiners. Second, it applies only to those persons whose contracts of employment are without limitation as to time. In these respects appellant does not fall within this rule (sec. 1617, Pol. Code, as amended, Stats. 1913, p. 1136; sec. 1791, Pol. Code, as amended, Stats. 1915, p. 817). Section 1617 was amended and incorporated into section 1609 of the Political Code but the same restriction of duration of the terms of teachers' contracts existed in 1918, when appellant was employed by respondent. (See Stats. 1917, pp. 735–738.) The pertinent parts of section 1609 of the Political Code, as amended in 1921 (Stats. 1921, p. 1664) and which subsequently were incorporated into the School Code in 1929, may be thus stated. In effect these sections provide that a school district may enter into a contract of employment with a certificated teacher for a period of one school year and will be deemed to continue to enter into such contracts unless the district properly notifies the teacher of the termination of the contract prior to the end of the school year; that if the district continuously employs a teacher for a prescribed number of years and does not dismiss the teacher

at the end of that time, the district loses the power to dismiss the teacher and must continue to employ him unless he is removed for cause or the number of pupils decreases to the point where the personnel must be reduced or the branch of education he is teaching is discontinued. Nowhere does the law provide that this limitation on the power of the district to dismiss the teacher shall be part of his contract. Nowhere in the law is there any provision for the contract between the teacher and the State of California guaranteeing this permanency of tenure. Under well recognized principles of law, a legislative act which would, if construed to be a contract, limit or extinguish the power of the government completely to control the subject matter of the enactment, will not be so construed unless the legislative intention to create a contract clearly appears, and all doubts must be resolved in favor of the continuance of the power of the government. An agreement requiring the surrender or suspension of legislative control will not be raised by mere implication. (12 Am. Jur. 39.)

 No clearer indication of the legislative intent in the enactment of these tenure provisions with respect to the relinquishment of legislative control can be found than that contained in the last paragraph of section 1609 of the Political Code and now contained in section 5.406 of the School Code. This section provides:

"All employments under the provisions of this Part shall be subordinate to the right of the Legislature to amend or repeal this Part or any provision or provisions thereof at any time, and nothing herein contained shall ever be held, deemed or construed to confer upon any person employed pursuant to the provisions hereof a contract which will be impaired by the amendment or repeal of this part or of any provision or provisions thereof."

The "Part" referred to in section 5.406 is part III of division V of the School Code, in which part are contained the provisions of the code relating to the employment, qualifications, classification and dismissal of teachers. Not only is it clear from the statutes themselves that the legislature did not intend to relinquish jurisdiction over permanent tenure of teachers, but no cases have been cited in which the permanent tenure status has been held to be contractual. On the

contrary, several California cases have specifically stated that tenure is a statutory and not a contractual status. (*McKee* v. *Edgar*, 137 Cal. App. 462 [30 Pac. (2d) 999].)

In *Fidler* v. *Board of Trustees*, 112 Cal. App. 296 [296 Pac. 912], it is stated:

"A distinction must be kept in mind at all times in consideration of the instant case between the right to permanent tenure of the office and the right to compensation during each year. . . . It is an important distinction, for his status as a permanent teacher is conferred upon him by the statute, and is not dependent upon contract; while his right to compensation is a proper subject of contract."

In this case is cited *Buckbee* v. *Board of Education*, 115 App. Div. 366 [100 N. Y. Supp. 943, 950], wherein the court states:

"There is an obligation until the legislature sees fit to change the law, but not a contract for the permanent employment of teachers. . . . "

These and other expressions of California courts compel the conclusion that tenure in California, under the 1921 amendment to Political Code section 1609 and under the terms of the present School Code, is statutory and not contractual; that there is no contractual relationship between the teacher and the State of California; that the tenure provisions of the law did not become a part of the teacher's contract of employment, but rather are restrictions upon the power of the school district to dismiss a teacher after he has been employed under specified conditions for a certain length of service.

Certainly there is a contract of employment between the school district and the teacher and the terms thereof are carefully prescribed by the statutes and explained by the cases previously cited. The maximum term of employment for which the school district can contract is one year. For the first year there must be an express contract but thereafter it can be implied. The contract can specify the salary, subject to a statutory minimum, the duties to be performed, the number of hours per day which the teacher shall perform his services, the age and class of students which will be taught, and other details relating to actual employment. But no-

where is there any term of the contract relating to permanent tenure nor, significantly, is there any provision anywhere in the School Code or in any statute requiring the teacher to accept employment for an indefinite time, requiring the teacher to remain in the service of the school district, once he has obtained tenure, as long as he is physically, mentally and morally able, or giving the school district a cause of action against the teacher for breach of contract if the teacher resigns without leave of the district at the end of any school year after the teacher has acquired permanent tenure.

█ As between the school district and the teacher, as was stated in the Buckbee case cited above, there is an "obligation" specified in the school law, but as was also stated in that case, this obligation continues only "until the legislature sees fit to change the law". In California, as in New York, the legislature still has plenary power over teacher tenure, there being no constitutional provisions in any way limiting that power.

Questions of the validity under the Constitution of the United States of statutes altering teacher permanent tenure have been passed upon by the Supreme Court of the United States (*Phelps* v. *Board of Education*, (1937) 300 U. S. 319 [57 Sup. Ct. 483, 81 L. Ed. 674]). By New Jersey statutes teachers' tenure not only guaranteed continuity of employment but also that a teacher's salary could not be reduced except for specified causes. An amendment permitted local boards of education to lower salaries to a specified minimum. This case was brought to attack the action of a local board in lowering the plaintiff's salary and the appeal to the United States Supreme Court was taken on the ground that plaintiff's right not to have his salary lowered was contractual. The Supreme Court upheld the decision of the state court that this right was statutory and did not amount to a legislative contract. In this decision the court pointed out:

"Although after the expiration of the first three years of service the employee continued in his then position and at his then compensation unless and until promoted or given an increase in salary for a succeeding year, we find nothing in the record to indicate that the board was bound by contract with the teacher for more than the current year. The em-

ployee assumed no binding obligation to remain in service beyond that term. . . . ''

In *Dodge* v. *Board of Education,* (1937) 302 U. S. 74 [58 Sup. Ct. 98, 82 L. Ed. 57], an act of the Illinois legislature in 1917 established teacher tenure in the Chicago schools following a three-year probationary period. In 1926 an act was adopted providing for compulsory retirement of Chicago teachers at the age of 70, with certain exceptions during the time the act was being put into effect, on a retirement salary of $1500. In 1935 an amendment reducing the retirement age to 65 years was adopted and the retirement salary reduced to $500. Several teachers affected by this amendment brought actions for restoration of their $1500 annuities. The United States Supreme Court held that the retirement annuity was purely statutory, created no contractual obligation, and was therefore subject to revision by the legislature.

Applying these rules of the United States Supreme Court, we can reach only one conclusion and that is that appellant's tenure is not protected by the Constitution of the United States. In no California case cited by appellant has any California court found such a contract as the one before us to be considered as a contract between the state and the teacher, or found that any statutory provision incorporates the tenure laws into the teacher's contract of employment.

The recent decision on May 10, 1938, of the Supreme Court of Oregon (*Campbell* v. *Aldrich,* 159 Or. 208 [79 Pac. (2d) 257], is so factually similar to the instant case and the various cases cited by appellant and respondent have been so adequately assimilated and harmonized, that we feel disposed to willingly adopt as a part of this opinion the reasoning therein expressed and the inevitable conclusion reached. An appeal was taken in that case to the United States Supreme Court and was dismissed on October 10, 1938, in that court on motion of appellees, ''for want of a substantial federal question''. (305 U. S. 559 [59 Sup. Ct. 87, 83 L. Ed. Adv. 2].) The Oregon statute under consideration was, in effect, much stronger than section 5.505 of the School Code of this state in that it not only terminated permanent teacher tenure, which had been previously adopted, at the age of 65 years, but made retirement thereafter compulsory. The teachers' tenure law in question was similar to the tenure law of our

state. In upholding the validity of the enactment that court said, at p. 259:

"Let us first determine whether the plaintiffs acquired any contractual rights, as distinguished from a mere status or privilege, by virtue of the 1913 tenure law. Ordinarily it is the function of a Legislature to make laws and not contracts. It is true, however, that legislative enactments may contain provisions which, when accepted as the basis of action by individuals, become contracts between them and the state. It is also equally well established that the intention of the Legislature thus to create contractual obligations, resulting in extinguishment to a certain extent of governmental powers, must clearly and unmistakably appear. . . .

"The Legislature, in the exercise of its sovereign power, has in effect said that compulsory retirement of teachers who are 65 years of age tends to promote the general welfare of the public and is for the betterment of the public school system. Many reasonable-minded persons believe that there is danger of schools being loaded down with superannuated teachers who have lost their appeal to youth. It is, indeed, significant that the interveners, who are officials of the Affiliated Teachers' Council of Portland and who are interested in maintaining a high standard of efficiency in the schools, support the contention of the defendants that the compulsory retirement provision was enacted for the purpose of increasing the efficiency of the teacher employees. Whether such legislation is wise is not for this court to determine. It is sufficient to say that we do not consider such compulsory retirement of teachers arbitrary or unreasonable. . . . It is beside the question that the plaintiffs are efficient and well qualified to teach. Laws are not enacted to fit individuals. It is the average teacher of the age of 65 years that the Legislature had in mind.

"In our opinion, the sovereign power vested in the Legislature to enact laws for the betterment of common schools is one which cannot be bartered away. The exercise of such power at one time does not mean that future Legislatures may not, in the light of experience, declare a different policy. If such is not the law, there is no hope for progress, and future legislators, in determining educational policies concerning the tenure of teachers, must follow in trodden paths."

Since the status of teachers having permanent tenure in the public schools of the State of California is statutory and not contractual, since the legislature reserved to itself the power at any time to make amendments to the permanent tenure laws, and since the amendment of these permanent tenure laws enacted into section 5.505 of the School Code is fair and reasonable, this section does not violate any provisions of the Constitution of the State of California or of the Constitution of the United States.

Appellant's application for a peremptory writ of mandate to compel his restoration to his former status is, therefore, without legal foundation and the action of the Superior Court of the State of California in and for the County of San Diego is sustained.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 25, 1939.