[L. A. No. 17898. In Bank.—Sept. 3, 1941.]

ELEANOR ROEHR KACSUR, Appellant, v. BOARD OF TRUSTEES OF SOUTH WHITTIER ELEMENTARY SCHOOL DISTRICT et al., Respondents.

[L. A. No. 17899. In Bank.—Sept. 3, 1941.]

THELMA WEAGLEY HILL, Appellant, v. BOARD OF TRUSTEES OF SOUTH WHITTIER ELEMENTARY SCHOOL DISTRICT et al., Respondents.

Tanner, Odell & Taft and Robert A. Odell for Appellants.

Ray C. Eberhard, as *Amicus Curiae,* on behalf of Appellants.

J. H. O'Connor, County Counsel, and William B. McKesson, Deputy County Counsel, for Respondents.

CURTIS, J.—These are appeals from judgments in mandate proceedings. Appellants, teachers in the South Whittier Elementary School District, sought by writs of mandate in the superior court to require the respondents to fix their salaries for the school year 1938–39 at least in the sum of $1,600 and accordingly to draw warrants upon the county treasurer of Los Angeles County for such sums. Appellant Kacsur also sought the recovery of certain traveling expenses incurred by her in connection with her assignment as a home teacher. After a hearing the trial court refused to issue the peremptory writs requested. The cases were tried together in the lower court and are presented to this court on one set of briefs and one reporter's transcript. The appeals will therefore be considered together.

Appellant Hill has been a classroom teacher in respondent district since July 1, 1927, and appellant Kacsur since July 1, 1928. They are the only two permanent teachers of the eighteen full-time regular teachers of the district. This status was attained prior to August 14, 1931, the effective date of the amendment to section 5.501 of the School Code, by which it was made optional with boards in school districts, such as respondent, which have under 850 pupils average daily attendance, to classify certified employees as "permanent." Respondent district exercised such option and decided not to classify any more teachers as "permanent."

From 1933 to 1937 the salaries of appellants had been $1,570 per year. For the year 1937–38, pursuant to a salary schedule adopted by the board which provided for annual increments if certain requirements of special study were met, their salaries were fixed at $1,600. This sum was the highest paid to any of the regular teachers for that year and was also the sum received by a Miss Harrington, who had been in the district for nine years but was not a permanent teacher because

of the aforementioned option exercised by the district. The three had been paid identical salaries of $1,570 for the preceding three years.

In May, 1938, appellants were notified that they had been reemployed for the school year 1938–39 and were sent written forms of contracts specifying salaries of $1,325 for that year. (This was $5.00 over the minimum salary fixed by section 5.751 of the School Code.) The respondent board took action "abolishing" the salary schedule that had been adopted for the previous year, although other salaries were apparently fixed in accordance with the former salary schedule. Miss Harrington's salary was fixed at $1,600 and no other full-time classroom teacher's salary was so low as that proposed for appellants. Prior to the notification of salary changes the teaching assignment of appellant Kacsur had been changed. She was removed from the fifth grade to "home teaching," which necessitated her going to the homes of pupils of all grades. This home teaching was conducted for those pupils who, for various reasons, could not attend school. She was also assigned to remedial reading classes and to clerical work in the superintendent's office. No provision was made for her transportation to the homes and the respondent board refused to reimburse her for the expenses incurred in carrying out the home teaching assignment. At the opening of the school year 1938–39 appellant Hill was transferred from the eighth grade, which she had been teaching for the past three years, to the third grade.

Appellants protested against the proposed salary changes as being unreasonable and discriminatory and made written demand for salaries at least in the sum of $1,600. Appellant Kacsur also made demand for the sum of $20.50 actual and necessary traveling expenses incurred and made necessary by her assignment to home teaching work. The appellants did not reject employment in the district and did teach according to their assignments during the year 1938–39.

In denying the petitions for issuance of peremptory writs of mandate the trial court found "that in fixing the said salary the governing board of the district did not act arbitrarily or fix an unreasonable salary for said petitioner(s), but said salary was fixed by said board in good faith and not from any improper or illegal motive."

Appellants contend that the action of the respondent board in reducing their salaries was clearly unreasonable, arbi-

trary and discriminatory and that the finding of the superior court to the contrary is not supported by the evidence. Appellants further contend that the alleged discriminatory and arbitrary action was taken against them because they were the only two permanent employees, and the respondent board so acted in the hope of forcing their resignations and thus evading the permanent tenure provisions of the School Code.

Respondents argue that discrimination or unreasonableness cannot be shown by comparison with salaries of former years or with salaries of other teachers for the reason that each teacher is an individual employee of the district and each teacher's salary is fixed under a one year contract distinct from any past or future contract. ██ The employment of a teacher is primarily one of contract (*Fidler* v. *Board of Trustees,* 112 Cal. App. 296 [296 Pac. 912]), but the relationship of a permanent teacher differs materially from that of private employment. As was stated in *Abraham* v. *Sims,* 2 Cal. (2d) 698, 710 [42 Pac. (2d) 1029]: " . . . 'Notwithstanding, however, that the relation between a teacher and the board of trustees is essentially one of contract, and that, until the teacher has attained a permanent status, his or her reemployment in succeeding years is a matter purely in the board's discretion, the situation is so far modified by the teachers' tenure enactments . . . that as said with respect to permanent teachers in *Dutart* v. *Woodward,* 99 Cal. App. 736, 739 [279 Pac. 493], "the legislature has conferred upon teachers, under special circumstances, a vested right to be so classified and to teach as permanent instructors, in the particular district where this right has been secured, subject to such reasonable rules as may be adopted, which are not in conflict with law". The result of these enactments was not to make the relation any the less one originating in contract, but to annex to contracts of employment when repeated for a sufficient time certain legal consequences. These consequences are not contractual except in the broad sense of being annexed by operation of law to the contract and have been said to be "in the nature of a civil service regulation". . . . ' "

██ Under section 5.731 of the School Code the administrative agencies may fix the salaries of teachers. It is now well established that a permanent teacher has no vested right to a particular salary and that such salary may be changed by the administrative authority. (See *Butterworth* v. *Boyd,* 12 Cal.

(2d) 140 [82 Pac. (2d) 434, 126 A. L. R. 838] ; *Abraham* v. *Sims, supra; Emerson* v. *Board of Trustees,* 23 Cal. App. (2d) 432 [73 Pac. (2d) 935] ; *Hodge* v. *Board of Education,* 22 Cal. App. (2d) 341 [70 Pac. (2d) 1009] ; *Fidler* v. *Board of Trustees, supra.*) ■ However, there are limitations on the power of boards of trustees to change salaries of permanent teachers. One of the "legal consequences" referred to in the Abraham case, *supra,* is that the fixing of salaries must not be discriminatory, arbitrary or unreasonable. The above cited cases all so qualify the general power of the administrative agencies to fix the salaries of permanent teachers. Because of this qualification it necessarily follows that there must be a comparison with the salaries of other teachers or salaries of previous years. If this could not be done, the qualification would be meaningless. Respondents' contention that there can be no comparison is therefore without merit.

■ The record shows that the respondent board attempted to *materially reduce appellants' salaries from $1,600 to $1,325,* practically the minimum allowed by law. It is further shown that no other salaries were reduced ; most of them were raised ; and the salary of a teacher of approximately the same years of service, experience and qualifications remained the same. These facts standing alone are sufficient to force the conclusion that the attempted action of the board was unreasonable and arbitrary. The fact that the salary of a teacher of like experience and years of service was not reduced is particularly strong in support of appellants' claim of discrimination. That there must be some degree of uniformity was recently recognized by this court in the case of *Fry* v. *Board of Education,* 17 Cal. (2d) 753 [112 Pac. (2d) 229], wherein it is stated at p. 757 : " 'It must be conceded that, within the limits fixed by the School Code, the Board has discretionary control over the salaries of teachers. (Citing cases.) However, it must also be conceded that the legislature had enjoined on such Boards, within reasonable limits, the principle of uniformity of treatment as to salary for those performing like services with like experience. . . . ' "

■ As a result of the above facts a *prima facie* case of abuse of discretion was established, and it was then incumbent upon the respondent board to offer some reasonable explanation or justification for its action. (*Allen* v. *McKinley,*

*(Cal. App.) [109 Pac. (2d) 429].) ▮ Although an attempt was made by the respondents both in the proceeding in the trial court and in the reply brief, to explain or justify the action, it is difficult to follow such explanation. In the reply brief it is stated that appellants' salaries were fixed at $1,325 ''because they had been assigned to different duties than theretofore performed, and also because the Board in its sound discretion believed that they should not be paid any more for the type and character of the teaching service which they were rendering to the district.'' The evidence does not support the first asserted ground for the reduction in salaries. On the contrary, the superintendent, on whose recommendation the board wholly relied in fixing the salaries at $1,325, expressly stated that the change of assignment had no bearing on the salary alteration. ▮ Furthermore, a change in assignment could not be used as justification for a reduction in salary, for although a board may reasonably change the assignment of a permanent teacher, the work assigned must be of grade and rank equivalent to that by which the permanent status was acquired. (*Hodge* v. *Board of Education, supra; Mitchell* v. *Board of Trustees,* 5 Cal. App. (2d) 64 [42 Pac. (2d) 397] ; *Cullen* v. *Board of Education,* 126 Cal. App. 510 [15 Pac. (2d) 227 [16 Pac. (2d) 272].) If such change in assignment warranted a reduction in salary, the work assigned could hardly be said to be of the same grade and rank.

▮ The appellants argue that the second ground of justification for the change in salary offered by respondent board, *viz.,* that they should not be paid any more for the type and character of the teaching service they were rendering, is an issue as to their qualifications and, as such, could not be tried in this proceeding. It is contended that the trial court erred in admitting any testimony designed to show that appellants were inefficient when, by the admission of the pleadings, no charges had ever been preferred against them. In support of such contention appellants refer to those sections in the School Code which provide for dismissal proceedings because of incompetency or inefficiency. (Sec. 5.650 et seq.) Under these sections an employee has a right to notice and an

---

*REPORTER'S NOTE: In *Allen* v. *McKinley* a hearing was granted by the Supreme Court on March 20, 1941. The final opinion of the Supreme Court, adopting the opinion of the District Court of Appeal, is reported *post,* p. 697 [117 Pac. (2d) 342].

opportunity to correct his faults before any action may be taken. In the instant case there was, of course, no dismissal proceeding instituted by the board. The case of *Lotts* v. *Board of Park Commrs.*, 13 Cal. App. (2d) 625 [57 Pac. (2d) 215], is particularly relied on by appellants. This case involved certain civil service regulations similar to the provisions of the School Code relating to dismissal. The Board of Park Commissioners of Los Angeles attempted to assign certain employees to half-day work with a consequent reduction in salary. The court held that the attempted change in assignment was a removal or discharge and that such could not be done except by the regular dismissal proceeding provided for in the city civil service regulations. The board attempted to justify its action by showing that the employees had become incapable of performing their usual duties. The court again referred to the removal proceedings and held that if inefficiency or inability were charged, the employees had a right to notice and hearing as provided by the civil service regulations. While there is language in that opinion which might support appellants' contention, we are not prepared to say that in no case may a school board offer evidence of incompetency or inefficiency as justification for a reduction in salary or a discrepancy in salary between two teachers of the same years of experience and service. It is quite possible that a situation might exist in which one of two teachers of similar experience and service might be not only more capable, but also more industrious and willing than the other, who although sufficiently competent to prohibit dismissal, might be somewhat indolent and non-cooperative. In such a situation the school board should be permitted to exercise its reasonable discretion in raising the salary of the industrious teacher as a reward for her good work without at the same time having to increase the salary of the undeserving teacher. But if no evidence of the inefficiency or shortcomings of one and the efficiency of the other was permitted in an action which might be instituted by the dissatisfied lower salaried teacher, then the board would have no way of justifying its action, and all discretion would be taken from such board. What has just been stated here does not conflict with the previously quoted "uniformity" statement in the case of *Fry* v. *Board of Education, supra*. The "within reasonable limits" phrase was no doubt inserted in that case so that a school board would

still retain some discretion as to the fixing of salaries even as to teachers performing like services with like experience.

■ In the instant case the appellants alleged abuse of discretion on the part of the respondent board and introduced certain evidence already referred to which tended to support that allegation. The burden was then on the board to show that there was no abuse of discretion. The appellants should not now complain against the acceptance of evidence offered by the respondent board in an attempt to justify its action.

■ However, we are of the opinion that the evidence introduced by the board was not sufficient to support the finding of the trial court that the board did not act arbitrarily or fix an unreasonable salary.

Appellants' salaries for the year 1938–39 were fixed by the respondent board at $1,325 wholly on the recommendation of the school superintendent Winton Smith, who had been employed in that capacity at the close of the 1936–37 school year. Mr. Smith testified at length as to his reasons for recommending the salary changes, but his testimony falls far short of being sufficient to justify the action of the board. There are some general statements directed against the efficiency of appellants, but such testimony is too vague to be of any value, and, in fact, the superintendent expressly stated: "I am not endeavoring to prove that they (appellants) are inefficient teachers." There is some intimation that the change of assignments was the reason for the change in salary, but as previously pointed out, there are direct statements to the contrary, at least as to appellant Hill. In regard to appellant Kacsur, there is no express statement that the change to home teaching was the reason for the change in salary, and Mr. Smith admitted that just as much ability was required in home teaching as in classroom teaching. The superintendent's basic reason for his recommendation apparently was that the "philosophy of teaching" of appellants differed to some extent from his. As was stated by him: "Now, I didn't have any particular quarrel with these teachers, and I am not trying to set out here that they are indifferent in any way, the only thing is they didn't seem to embrace wholeheartedly the philosophy of teaching which I was trying to get over to them at that time." It seems self-evident that such an indefinite and uncertain term as "philosophy of teaching" cannot be used as justification for the salary reduction and dif-

ferentiation that is existent here. This court is admittedly not sufficiently enlightened to discuss or even recognize the different philosophies of teaching. It is common knowledge that even the authorities in the educational field differ violently not only as to the value of the various philosophies of teaching, but also as to the methods by which they should be carried out. If such generalities were permitted to be used as justification for salary changes, then the actions of the administrative boards would not be discretionary but wholly arbitrary. The instant case is illustrative of the inadvisability of using such a method to test the value of a teacher. It is disclosed by the record that the county authorities desired that the teaching be conducted on a more informal basis by the use of the "activity" or "unit" plan. This is apparently what Mr. Smith meant by his philosophy of teaching. However, when called upon to explain it to the lower court, he found himself unable to do so and was forced to refer to and read from a certain text on the subject. The superintendent might well have asked appellant Kacsur to explain it to the judge, for as disclosed by the record, he at one time requested her to address the Parent Teachers' Association on the progress of the activity work system and praised her explanation at that time. There is no testimony in the record showing that appellants refused to perform their duties as requested. Both carried out their work as they were instructed to do. Nor do we find any specific criticism by Mr. Smith of any particular phase of the work of appellants. When asked in what respect appellant Kacsur failed to follow a course of study he had outlined for her, he stated: "That course of study, as I said before, involves the teaching philosophy as a whole, and I can't point out any particular point or matter that she didn't follow." From the testimony referred to and that of a similar nature running throughout the entire record, we are convinced that the superintendent completely failed to justify his recommendation of the salary reductions.

Appellants earnestly insist that the respondent board took the action complained of to force their resignations and thus evade the tenure law. They point to the fact that they are the only permanent teachers in the district; that no charges have ever been made against them; that each was requested to resign at the end of the third year of employment; that the salary of a probationary teacher of similar years of experience and service was kept at $1,600; that the salaries of

other teachers were raised; and that they were given strange assignments. Appellants also contend that the evidence clearly shows that the board was opposed to the tenure law. That there have been numerous and diverse attempts to circumvent the tenure law is evidenced by the number of times both the court and the District Courts of Appeal have been called upon to examine and prohibit such schemes of evasion.

■■■ If a reduction in salary is made for the purpose of getting rid of a teacher who had acquired permanent status, such action would unquestionably be arbitrary and subject to correction by a court. (*Emerson* v. *Board of Trustees, supra.*) While the facts of the instant situation tend to support appellants' contention, we do not find it necessary to base our decision on that ground. It is also stated in the Emerson case, *supra,* at p. 435: "It may be possible to suppose a case where the nature of the reduction would be such as to disclose in itself that it was unreasonable and arbitrary. . . . " The present case is a good example of the type Justice Barnard had in mind when he made the above-quoted statement. We prefer to base our decision on this ground rather than on the ground that the respondent board intentionally attempted to evade the tenure law.

The cases in which salary reductions have been permitted are of no aid to respondent board. Indeed, those cases strengthen our conclusion that there was no justification for the fixing of appellants' salaries at such a low figure in this case. In *Fidler* v. *Board of Trustees, supra,* the salary was fixed at $2,500 as against $2,900 for the previous year. From the opinion it appears that the board had lost certain federal state aid and further, that the previous year the teacher had performed duties of an administrative or executive character under the title of vice-principal. The teacher was not protected by the tenure law as to his vice-principalship, and the court concluded that the relief from those duties plus the loss of funds available justified the lower salary. *Hodge* v. *Board of Education, supra,* is quite similar in that the teacher was relieved of certain supervisory duties. It was further pointed out in that case that no other teacher with similar qualifications was paid a higher salary. In *Emerson* v. *Board of Trustees, supra,* there was only one teacher in the school, and it was held that $1,000 was reasonable because of the insufficiency of funds to warrant a higher salary. There were more

funds actually available, but the court pointed out that the board was charged with the duty of trying to make the funds available cover the expenses which were reasonably to be anticipated.

Appellant Kacsur's demand for $20.50 incurred by her as necessary traveling expenses is governed by section 5.532 of the School Code. That section provides, in part: ''The governing board of any school district shall have the power and the duty to provide for the payment of the actual and necessary traveling expenses of any employee of the district when performing services for the district under the direction of the governing board thereof.'' The allegation in respect to this expenditure was found to be true by the trial court, and respondent board does not question such finding on this appeal. The board should have reimbursed appellant Kacsur for the sum expended and for any further sums since expended in a like manner.

For the foregoing reasons the judgments are reversed and the superior court is ordered to enter judgments determining that appellants are entitled to have respondent board fix their salaries for the school year 1938–39 at such sums as shall not be unreasonable or discriminatory, and at least in the sum of $1,600 for each appellant for said school year; and that appellant Eleanor Kacsur is entitled to the sum of $20.50 as and for necessary traveling expenses incurred in performing services for said district at the direction of the governing board thereof during the school year 1937–38, and is also entitled to be paid her necessary traveling expenses in performing any service under the direction of said respondent board during the school year 1938–39. It is further ordered that the superior court issue its writs of mandate directed to the respondent board commanding said board to fix the salaries of appellants as hereinabove determined and directing said board to draw its warrant and demand on the County Treasurer of Los Angeles County in favor of each of said appellants for her salary as so fixed for the school year 1938–39, less any amounts paid said appellant by said board on account of services rendered by her during said school year.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., and Traynor, J., concurred.