[Civ. No. 12513. First Dist., Div. One. Oct. 2, 1943.]

MARY M. PHELPS, Appellant, v. L. S. PRUSSIA et al., Respondents.

David M. Burnett, Irvin A. Frasse and Rea, Free, Jacka & Frasse for Appellant.

John P. Fitzgerald, District Attorney, and Leonard R. Avilla, Assistant District Attorney, for Respondents.

WARD, J.—Petitioner appeals from a judgment of the trial court denying her petition for a writ of mandamus to compel the defendants, as individuals and as members of the Board of Education of the city of San Jose, and the City Superintendent of Schools, to reinstate her as a permanent teacher and pay her salary as such from the beginning of the fall school term of 1942. Except for a stipulation as to the age of petitioner, and data on several other uncontested matters, no evidence was offered. The facts alleged in the petition, which were admitted in the answer, were found to be true.

The questions involved may be stated as follows: (1) What is the rule as to the validity or invalidity of a charter provision in the matter of tenure of office when subsequent legislation on the same subject has been enacted by the state Legislature? (2) Does the charter provision create in an appointee a contractual right to teach in the municipality until removed for cause? (3) Is the contractual right, if any, impaired in violation of the federal and state Constitutions?

In directing the preparation of findings the trial court, in a well-considered written opinion, disposed of all the ques-

tions. Several comparatively recent citations have been called to our attention, notably *Fry* v. *Board of Education,* 17 Cal. 2d 753 [112 P.2d 229] and *Kacsur* v. *Board of Trustees,* 18 Cal.2d 586 [116 P.2d 593]. In the Fry case, involving salaries, the defendants' authority to fix, regulate, etc. arose primarily from the provisions of the San Francisco Charter. There the court, at page 757, said: " 'It must be conceded that, within the limits fixed by the School Code, the Board has discretionary control over the salaries of teachers.' " The quotation was approved in the Kacsur case. While the question of the amount of salary is not an issue herein, the above quotation is indicative that the Legislature may enjoin upon local boards certain reasonable limitations even when these are operating under a charter. On the subjects of tenure, permanency, indefinite contracts, etc., see 127 A.L.R. 1287 et seq. and *Campbell* v. *Aldrich,* 159 Ore. 208 [79 P.2d 257].

The following views of the trial court covering the factual background and setting forth the law are adopted as the opinion of this court: "The plaintiff herein, Mary N. Phelps, was a certificated teacher of the San Jose High School, continuously from 1906 until the close of the school year in 1942.

"On May 12, 1942, the San Jose Board of Education dismissed her in obedience to the provisions of section 5.505 of the School Code of the State which provides for the termination of permanent tenure of teachers at the end of the school year in which they attain the age of sixty-five years.

"The plaintiff was sixty-five years of age on November 19, 1941.

"No question is, or has been, raised concerning Miss Phelps' qualifications or abilities. She is conceded to be physically vigorous—mentally alert—and an excellent teacher. Apparently no cause existed for her dismissal, other than her age and the operation of the section of the School Code above cited.

"She has brought this action against the defendants—the officials of the San Jose Unified School District—for a writ of mandamus, to compel her re-instatement in her former position.

"Her contention is that she acquired a permanent tenure as such teacher under the provisions of the Charter of the City of San Jose, and that a contractual relation between her

and the School District resulted, which was beyond the power of the District, the Legislature or the State to impair.

"As it will be necessary to examine this contention in its various aspects and implications, it may be useful to first review, historically, the various public acts which may have a bearing on the inquiry.

"1. The United States Constitution—Art. 1, sec. 10, subd. 1—forbids any state to pass any law impairing the obligation of contracts.

"2. The Constitution of the State of California—art. 1, sec. 16—provides that no law impairing the obligation of contracts shall ever be passed.

"3. By sections 5 and 6 of Art. IX of our State Constitution, the Legislature is charged with the duty to provide for a system of free common schools, and vested with broad powers in relation thereto.

"4. Subd. 27, sec. 25, art. IV of the same Constitution forbids the Legislature to pass any local or special law providing for the management of common schools.

"5. In 1915 the City Charter of the City of San Jose was adopted by the voters of the city, and approved by the state Legislature. In a legal sense, it has the status of an act of the Legislature.

"In the charter was contained these provisions (section 127) :

" 'Teachers during the first two years of service in the Department and all special teachers shall be subject to annual election.

" 'After two years of service all teachers, other than special teachers, and including deputy or assistant superintendents, shall be classed as permanent teachers, and shall hold office until removed for cause upon the recommendation of the superintendent and the vote of a majority of the board; such vote to be by ayes and noes and recorded in the minutes.'

"Prior to the adoption of the City Charter, the Legislature, pursuant to its duties under the constitution, had established systems of public schools, and provided for their support and management. In general, the selection of teachers, and the conduct of the schools were delegated to the boards of the local school districts. These provisions of law were changed from time to time, by the amendment—or repeal of them, and the additions of new provisions.

"At the time of the adoption of the city charter, no general tenure law had been passed by the State; and the provisions contained in section 127 of the charter were not in conflict with, in derogation of, nor covered by, any other act or law of the State.

"6. In 1921, the Legislature passed some amendments to the school laws, creating for the first time a state-wide tenure for public school teachers. These provisions were very similar to the charter provision above quoted.

"7. In 1929, the Legislature passed and adopted the School Code, wherein all general school laws were codified, and all other outstanding school laws were repealed.

"The general tenure law was re-adopted; and there were enacted, and included in the new school code, these two quite important sections:

" 'Sec. 5.405—Nothing in this part shall be so construed so as to repeal or negate any provision concerning employees of school districts contained in the charter of any city, county, or city and county, heretofore or hereafter adopted and approved in conformity with Art. XI of the Constitution of this State.'

" 'Sec. 5.406—All employment under the provisions of this part shall be subordinate to the right of the Legislature to amend or repeal this part, or any provision or provisions thereof, at any time, and nothing herein contained shall ever be held, deemed or construed to confer upon any person employed pursuant to the provisions hereof, a contract which will be impaired by the amendment or repeal of this part or of any provision or provisions thereof.'

"8. In 1931, the Legislature passed another section of the School Code as follows:

" 'Sec. 5.504—Nothing in this article shall be construed as affecting any permanent employee classified as such at the time this section takes effect—nor shall any decrease in the average daily attendance of any school district operate to deprive any permanent employee of the district of his classification as such.'

"9. The section of the School Code under which the defendants herein undertook to act, in the dismissal of Miss Phelps, was passed by the Legislature in 1935, and reads as follows:

" 'Sec. 5.505—Excepting in districts situated within, partly within, or coterminous with the boundaries of a city, or city and county, where the charter, if any, of such city, or city

and county, provides an age at which employees, including certificated employees, of such districts, shall be retired, when a permanent employee reaches the age of sixty-five years, or if a permanent employee has reached the age of sixty-five years, the permanent classification of such employee shall cease, and thereafter employment shall be from year to year at the discretion of the governing board; provided that any certificated employee who is not re-employed under the provisions of this section, and who has not completed the requirements for full retirement salary, shall be deemed to have been retired on account of physical disability within the meaning of the provisions of this code relating to retirement of certificated employees of school districts. Provided that the effective date of this section shall be September 1, 1937.'

"It will be noted that this section was not to become effective for more than two years after its passage.

"In anticipation of its effective date, and prior thereto, the Legislature adopted a plan for a pension and retirement system for school teachers throughout the State.

"It may be taken, then, that the section of the school code under particular consideration here (sec. 5.505) is a part of a general plan of the State for the retirement and pensioning of school employees.

"In her attack on the action of the defendants in the instant case, the plaintiff undertakes to show that she has a contract of employment which is beyond the reach of this legislative enactment. Let us see how sound are her reasons for this contention.

"Her employment was effected by the local school board. If the contract she claims was one between herself and the school district, it must have been by virtue of the provisions of section 127 of the city charter. That charter was effective in school matters only because it had the legislative approval.

"This control of school matters was placed by our state Constitution in the Legislature.

"Where the Legislature delegates the local functioning of the school system to local boards, districts or municipalities, it does so, always, with its constitutional power and responsibility for ultimate control for the common welfare in reserve.

"The authority of the city charter is superior to general laws in all matters which are purely municipal affairs.

The charter will likewise control in matters not necessarily municipal where not in conflict with, or in derogation of general laws. Also where charter provisions are concurrent with and in line with legislative policy, they will be construed to control in their local application.

"Now, school matters are not municipal affairs. They may be made so by charter provisions (which, in the final analysis, is an act of the State), but only in promotion and not in derogation of the legislative school plans and purposes of the State.

"The power of a municipality in this regard can only run current with, and never counter to, the general laws of the State, touching the common school system. To such general laws, if conflict arises, all municipal charters must be subservient.

"When a municipality has, under its charter, exercised powers not essentially municipal, and the State has subsequently adopted legislation which conflicts with the municipal exercise of power, the latter has been held to expire with the passage of such legislation.

"It has never been held, so far as I have been able to read, that the Legislature, in approving municipal charters, or in conferring power and authority on local boards, bodies, districts, or political subdivisions, in relation to school matters, divested itself of the power of ultimate control, vested in it by the Constitution.

"Plaintiff cites *Stern* v. *City of Berkeley* [25 Cal.App. 685 (145 P. 167)] as authority for the proposition (underscored in her brief) that a charter provision must be upheld unless it be shown to have been *at the time of its enactment*, repugnant to and inconsistent with existing fundamental law. The underscored phrase was *obiter dicta*, and unfortunate, as it is at variance with the weight of authority. The case was decided on quite a different theory, and affords no help in the present situation.

"It is my considered opinion that section 127 of the San Jose Charter was not repugnant to, or in conflict with, the general law of the State, when the charter was adopted; and that the same was effective and controlling so long as it so remained. . . .

"As I have hereinbefore pointed out, the passage of section 5.505 of the School Code was a part of a general statewide plan of the Legislature for retirement and pensioning

of certificated school employees. It declared a general legislative policy. It terminated the power of all school boards and bodies, including boards acting under municipal charters, to continue the employment of such employees after the close of the school year in which they attain the age of sixty-five years, except, at their discretion from year to year. With that exception, it required the retirement of such employees.

"Whatever may have been the legislative intention in the various amendments of and additions to the school code, before this section was passed, there can be no doubt that it was intended to have general effect, and to supersede all existing laws, whether found in legislative acts or charter provisions, or elsewhere, which might conflict therewith.

"The plain purport of this section, considered in the light of the general plan, of which it forms a part, is thus seen to be clearly inconsistent with the provisions of section 157 of the San Jose Charter.

"But the plaintiff claims that the legal result of her continued service through the years when the charter provision was effective, was the creation of a contract between her and the school board, which could not be thereafter voided against her will, except for cause.

"While some cases in this State have referred to tenure rights of school employees as contracts, or contractual rights, or vested rights, the terms have generally been loosely used, and without attempt to make particular and specific application of their use. . . . In actual practice, no formal contracts have ever been drawn or signed or entered into. The law has never authorized such; nor can there be found anywhere in statutes or charters, a suggestion of formal contracts with school employees. Indeed, the only place in the school law, so far as I can recall, where such a contract is even mentioned, is in the section of the School Code number 5.406, which expressly negates the idea of contract.

"Of course, in a broad sense, when a teacher is employed, a simple contract between employer and employee results, but into that relationship enter so many elements and conditions which neither employer nor employee can control, that it would be difficult to abstract such a contract.

"The general character of these tenure provisions —statutory and charter—is that of a limitation on the power of the employing board to discharge, rather than an extension of power to employ. All of the California cases

which have been cited have dealt with the subject from this point of view. And certainly this does not argue a power in a local board to create a binding and perpetual contract which is beyond even the sovereign power of the State to avoid.

█ "It is a general principle that into every contract or transaction concerned with public affairs, must be read the reserve power of the State to enact general laws for the public good, and in pursuance of a public policy. It is an implied condition of every such contract that its fulfillment may be frustrated by the proper exercise of legislative power.

█ "But whether the rights of the school employee be termed contractual or statutory, they issue from the local board, acting under its delegated and limited powers. While the board may not terminate the relationship except as expressly permitted, the State is under no such limitation; and the employee enters into the contract—if one can call it such —with the knowledge that it may be terminated at any time by general legislative enactment.

"Some California cases have been cited, in which expressions are used indicative, it is claimed, of a holding that tenure creates binding contracts and vested rights. Without mentioning all of them, I cite two of these cases as illustrative:

"In *Klein* v. *Board of Education*, 1 Cal.2d 706 [37 P.2d 74], this expression was used, 'Of course, any tenure previously acquired by respondent was a vested right, and remained unaffected by such repeal.' (P. 708.) A reading of this decision will quickly demonstrate that the use of these expressions was unnecessary to the decision, or else were used in only such sense as would be justified by the circumstances of the case.

"In the Klein case, the plaintiff had attained tenure under the provisions of a statute which was repealed by the adoption of the School Code; but in the very act adopting the code, was contained a saving clause (sec. 5 of the same code) which provided that 'all persons who, at the time this code takes effect, hold office under any of the statutes repealed, shall continue to hold the same according to the tenure thereof.' Obviously then, Klein retained her position, not because she had a 'vested right' to it, but because the repealing statute specifically preserved her tenure.

"This same reasoning is equally applicable to the case of

*Gastineau* v. *Meyer*, 131 Cal.App. 611 [22 P.2d 31], cited in the Klein decision, and in which again the expression 'vested right' is similarly used.

       ''The term 'vested right' is too often loosely used. In one sense, every right is vested. If a man has a right at all, it is vested in him; otherwise how could it be his right? It may, of course, be a right fixed and defined at the time, but subject to being defeated or vacated by future contingency; or it may be a right fixed for all time—as immutable as the laws of the Medes and the Persians. But a right, whether it be of such a fixed character, or otherwise, must be a right to something. And when one speaks vaguely of her 'vested right,' it induces to clarity to inquire, 'A vested right to what?' The answer to such a question in the Klein case would be 'to continue in my employment under the law as it now exists.' And a similar answer would be made to such an inquiry in the Gastineau case. Certainly there is no situation, either factual or legal, in either case, which would justify the answer 'such a vested right to continue in my employment as is beyond the utmost of the reserve power of the Legislature to terminate.'

''Yet such is the answer which the plaintiff in the instant case must make to such an inquiry, and she offers the authority of the Gastineau and the Klein cases, in partial support of her position. To my mind they are not convincing. Nor can I find in any of our State authorities any satisfactory evidence of such a view.

''A situation, very similar to that here being considered, and involving all of the major points of this case, was before the upper Courts in *Taylor* v. *Board of Education*, 31 Cal. App.2d 734 [89 P.2d 148]. This decision was by the Appellate Court, in the Fourth District, and had the approval of the Supreme Court, in an order of the latter tribunal denying a hearing therein.

''In the Taylor case, the plaintiff had been employed as a teacher in the San Diego High School, continuously from 1918. He had acquired a permanent tenure as such teacher, and held that classification until the same was terminated by the school district board in 1938. This action was taken in pursuance of section 5.505 of the School Code, as Taylor had reached the age of 65 years before that time.

''As in the present case, the action of the board was there

challenged, on the same grounds that are herein urged, with the single exception of the charter element, which was absent in the Taylor case.

"On every other question raised here, the Court in the Taylor case ruled against the plaintiff's contention.

"With respect to the element of the charter provision here, it would seem that a tenure created by a municipal charter would be no more sacred, or create any more binding contract, than would one created by an act of the Legislature, when both dealt with school affairs.

"The suggestion that the Legislature intended to except charter provisions from the operation of this section, is obviously without support. Both sections 5.405 and 5.504 of the School Code were adopted as saving provisions at the time, and not as limitations on the subsequent exercise of legislative power. This was discussed and determined in *Chambers* v. *Davis,* 131 Cal.App. 500, 501 [22 P.2d 27].

"Incidentally, it would appear to be somewhat significant of the legislative intention that sections 5.405 and 5.406 were passed at the same time—the latter clearly negating any intention of creating a vested right.

"Finally, the plaintiff here urges with great earnestness that the case of *Indiana ex rel. Anderson* v. *Brand,* 303 U.S. 95 [58 S.Ct. 443, 82 L.Ed. 685, 113 A.L.R. 1482], is determinative of her rights in the premises.

"Three times the United States Supreme Court has recently passed upon the application of art. I, sec. 10, subd. 1, of the federal Constitution to state school matters. In *Dodge* v. *Board of Education,* 302 U.S. 74 [58 S.Ct. 98, 82 L.Ed. 57], and *Phelps* v. *Board of Education,* 300 U.S. 319 [57 S.Ct. 483, 81 L.Ed. 674], it was held that state statutes which changed a teacher's tenure or retirement payment did not violate the constitutional inhibition against the impairment of contracts; while in the Anderson case (*supra*) a contrary holding was made.

"Strangely enough, all three decisions were written by Mr. Justice Roberts.

"Plaintiff here attempts to distinguish the cases on the theory that the Dodge and Phelps cases arose in states where the status of a teacher was that of an officer (Illinois and New Jersey), while the Anderson case arose in a state (Indiana) where a teacher's status was that of an employee, as in California.

"Such a distinction may well have been made, as plaintiff's

relation of the facts in that respect appears to be accurate; but the learned Justice who wrote the decisions did not make that distinction.

"A careful comparison of the Dodge and Anderson decisions, both written by the same Justice at the same term of court, discloses a much more substantial reason for the difference in results between these two cases.

"Quoting from the Dodge case: 'In determining whether a law tenders a contract to a citizen, it is of first importance to examine the language of the statute. If it provides for the execution of a written contract, on behalf of the state, the case for an obligation binding upon the state is clear. Equally clear is the case where a statute confirms a settlement of disputed rights, and defines its terms. On the other hand, an act merely fixing salaries of officers creates no contract in their favor, and the compensation named may be altered at the will of the Legislature. This is true also of an act fixing the term or tenure of a *public officer* or an *employee* of a state agency.'

" (It will be noted that in the last sentence quoted, an officer or employee of the state are placed by the learned Justice in the same category.)

"Continuing the quotation: 'The presumption is that such a law is not intended to create private contractual or vested rights, but merely declares a policy to be pursued until the Legislature shall ordain otherwise. He who asserts the creation of a contract with the state in such a case has the burden of overcoming the presumption.'

"Turning now to the Anderson case upon which this plaintiff relies, compare with the above these quotations: 'The principal function of a legislative body is not to make contracts, but to make laws which declare the policy of the state, and are subject to repeal when a subsequent Legislature shall determine to alter that policy.'

"The decision then proceeds to examine the act involved, to determine therefrom the intention of the Legislature. Quoting again: 'The State long prior to the adoption of the Act of 1927, required the execution of *written contracts* between teachers and school corporations—specified certain subjects with which such contracts must deal, and required that they be made a matter of public record. . . . The title of the act is couched in terms of contract. It speaks of the making and cancelling of indefinite contracts. In the body the word "contract" appears ten times in Section 1, defining the relationship—eleven times in Section 2, relating to the termi-

nation of the employment by the employer—and four times in Section 4, stating the conditions of termination by the teacher.

" 'The tenor of the act indicates that the word "contract" was not used inadvertently or in other than its usual legal meaning.'

"From these quotations it would appear to be the view of the learned author of those two decisions that, as stated in the Dodge case, 'If it (the statute) provides for a written contract on behalf of the State, the case for an obligation binding on the State is clear'; and, as found in the Anderson case, that there the statute did provide for a written contract on behalf of the State, and hence, in that instance, and for that reason that an obligation binding on the State resulted. More than this I am unable to get out of the Anderson case.

"Compare, then, the situation as we have it in California, with that detailed as affording the basis of the Anderson decision, in Indiana. In no one element are the cases similar. Here there are no written contracts—no statutory requirements for explicit and written contracts—no requirement for public recordation of the contracts—no reference to the relationship as being one of definite contract; and, finally, here we have a broad, definite and unqualified declaration of the legislative policy, in section 5.406 of the School Code, that employment thereunder should be subject to legislative control and should never be deemed or construed as creating an unimpairable contract."

The judgment is affirmed.

Peters, P. J., and Knight, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 29, 1943. Shenk, J., Carter, J., and Schauer, J., voted for a hearing.