Filed 4/14/22  In re V.P. CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| In re V.P., a Person coming under the Juvenile Law. | D079094 |
| L.L. et al., <br><br> Appellants, <br><br> v. <br><br> S.P., <br><br> Respondent. | (Super. Ct. No. EFL002713) |

APPEAL from a judgment of the Superior Court of Imperial County, William D. Lehman, Judge.  Affirmed.

John L. Dodd & Associates and John L. Dodd; Marcus Family Law Center, Ethan Marcus and Erin K. Tomlinson, for Appellants.

Suzanne M. Davidson, under appointment by the Court of Appeal, for Respondent.

This is the second appeal brought by L.L. and H.L. (Grandparents) involving the custody of their grandson, V.P., against V.P.'s father, S.P. (Father).  After their petition to terminate Father's parental rights for having

abandoned V.P. was unsuccessful, Grandparents sought legal and physical custody of V.P. as his presumed parents. The trial court held a hearing regarding Grandparents' custody and parentage claims and awarded Father sole custody. Grandparents then filed several ex parte motions, a motion for reconsideration, and a motion for a new trial, which were denied.

Grandparents appeal. They contend the trial court violated their right to due process by refusing to hold an evidentiary hearing on their custody and parentage claims. We conclude Grandparents have not shown a due process violation because they lack standing as nonparents to initiate this action seeking custody of their grandson. We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Portions of this section are taken from our prior opinion in this matter. (See *In re V.P.* (Sept. 20, 2021, D078780) [nonpub. opn.] (*In re V.P.*).)[1]

Father and V.P.'s mother (Mother) were never married. In 2011, Mother was diagnosed with synovial cancer, a rare form of cancer which primarily affects the arms and legs. Mother became pregnant with V.P. in October 2017. The cancer progressed to stage four by the time she was five months pregnant, and she was forced to deliver V.P. three months premature. Father was present for V.P.'s birth and signed a voluntary declaration of paternity the day after V.P. was born.

V.P. was hospitalized in the neonatal intensive care unit (NICU) for two months because he was born premature. He suffered from lesions on his brain, holes in his lungs, undeveloped skin, and he risked developing cerebral

---

[1] At Grandparents' request, we take judicial notice of the record on appeal in our prior opinion. (Evid. Code, §§ 452, subd. (d)(1), 459; Cal. Rules of Court, rule 8.252(a)(2); *People v. McCarthy* (2016) 244 Cal.App.4th 1096, 1100, fn. 2.)

palsy, deafness, and blindness. Father visited V.P. while he was in the NICU several times.

Once V.P. was released from the hospital, he began living in San Diego with Mother and Grandparents where he could continue to be treated by the same medical providers.[2] Doctors had created a multi-year medical plan for him, which included ongoing evaluations and diagnostics.

Mother died when V.P. was eight months old, and Grandparents moved with V.P. to their home in Imperial Valley. Although Father planned on taking V.P. to live with him in Arizona after Mother's death, he believed it was in V.P.'s best interests to continue living with Grandparents until V.P. finished his medical treatments. While in their care, Grandparents were responsible for taking V.P. to his medical appointments and supported V.P. financially. Although Father did not attend the appointments, Grandparents regularly updated him about V.P.'s progress. According to Father, he offered to provide financial support, but Grandparents told him it was not needed.

From the time of Mother's death to August 2019, Father visited V.P. for a few days at least once a month. Father's understanding was V.P. would start living with him full-time once V.P. had completed his physical therapy appointments in August or September 2019. Once August 2019 arrived, however, Father agreed to a transition period at Grandparents' request. In September 2019, V.P. began staying with Father every other week.

On March 16, 2020, Father and Grandparents had an argument about V.P.'s living arrangements. Father was concerned travel between Arizona and California could be restricted due to the escalating coronavirus pandemic and result in him becoming separated from his son. Grandparents ultimately

---

2    Grandparents maintained an apartment in San Diego and a home in Imperial Valley.

agreed to let Father take V.P. to Arizona, although they were upset V.P. had no clear date of return.

On March 21, 2020, Grandparents drove to Arizona for an agreed upon overnight visit with V.P. One day before, Grandparents had filed a petition to determine a parental relationship (the parentage case) in the trial court under Family Code section 7630.[3] In the parentage case, they sought legal and physical custody of V.P. as his "prospective adoptive parents" and a determination that Father is not V.P.'s parent.

Father was unaware of the parentage case when he released V.P. to Grandparents on March 21, 2020, believing V.P. would be returned the next day. Instead, Grandparents took V.P. with them to California, only informing Father of what they had done after they arrived home. Grandparents filed a petition under section 7822 several days later seeking to declare V.P. free from Father's custody and control and requesting to adopt him (the adoption case).[4]

In response to Grandparents' petition to determine a parental relationship, Father requested legal and physical custody of V.P. Father stated in his declaration that after taking V.P. back to California and initiating family court proceedings, Grandparents were denying his requests for visitation with his son.

---

[3]    Undesignated statutory references are to the Family Code.

[4]    A petition to free a child from a parent's custody and control may be granted where "[o]ne parent has left the child in the care and custody of the other parent for a period of one year without any provision for the child's support, or without communication from the parent, with the intent on the part of the parent to abandon the child." (§ 7822, subd. (a)(3).)

On June 2, 2020, the trial court issued a temporary emergency order providing Grandparents with V.P.'s legal and physical custody and allowing Father regular visits. The court also set the adoption case for trial, confirming it would proceed on the adoption case first.

After holding a trial in the adoption case, the trial court denied Grandparents' petition to free V.P. from Father's parental custody and control on March 17, 2021, finding no clear and convincing evidence Father had abandoned V.P. The court noted Father had been involved in V.P.'s life since birth, leaving V.P. in Grandparents' care solely on a temporary basis so V.P. could receive medical treatment. This court affirmed that ruling on appeal. (*In re V.P.*, *supra*, D078780.)

On April 1, 2021, the trial court held a hearing regarding the parties' competing custody requests. The court addressed at the outset of the hearing whether the adoption and parentage cases had been consolidated. Although the caption in the judgment entered on March 17, 2021 identified the case numbers for both the adoption case (case no. EAD000218) and the parentage case (case no. EFL002713), and referred to them as "consolidated," the judgment solely pertained to the issues raised in the adoption case. The court clarified the cases had been consolidated "in effect," meaning the court would consider evidence presented in the adoption case in ruling on the parentage case.

Regarding V.P.'s custody, although Grandparents' counsel acknowledged Father had parental rights, counsel contended Grandparents should also be "treated as parents." Counsel relied on the statutory provisions for nonparent custody set forth in section 3041, contending Grandparents were entitled to custody because they had provided V.P. with his day-to-day care since birth, and it was in V.P.'s best interests to remain in

5

their care.[5]  Father's counsel responded that Father had never abdicated his parental role, and he was thus entitled to have V.P. returned to his custody.

After hearing the parties' arguments, the trial court granted Father's request for sole custody.  The court indicated that given the court's earlier finding in the adoption case that Father had not abandoned V.P., Father had "been restored to his . . . parental rights."  The court also found no showing of detriment by placing V.P. in Father's custody, and that as the parent, Father had superior rights to Grandparents.  The court stated in closing:  "[T]his entire case has been a grotesque injustice since the child was taken from [Father] really under false pretenses back in March [2020]. . . .  And now a year later we need to do what we can to rectify that situation."  In the unsigned minute order awarding Father with sole custody, the court stayed

---

[5]    Section 3041 states in relevant part:

"(a) Before making an order granting custody to a person  other than a parent, over the objection of a parent, the court shall make a finding that granting custody to a parent would be detrimental to the child and that granting custody to the nonparent is required to serve the best interest of the child. . . .

"(b) Subject to subdivision (d), a finding that parental custody would be detrimental to the child shall be supported by clear and convincing evidence.

"(c) As used in this section, 'detriment to the child' includes the harm of removal from a stable placement of a child with a person who has assumed, on a day-to-day basis, the role of  the child's parent, fulfilling both the child's physical needs and the child's psychological needs for care and affection, and who has assumed that role for a substantial period of time.  A finding of detriment does not require a finding of unfitness of the parents.

"(d) Notwithstanding subdivision (b), if the court finds by a preponderance of the evidence that the person to whom custody may be given is a person described in subdivision (c), this finding shall constitute a finding that the custody is in the best interest of the child and that parental custody would be detrimental to the child absent a showing by a preponderance of the evidence to the contrary."

6

the order requiring Grandparents to transfer V.P.'s custody to Father for 30 days.

Grandparents then filed a "notice of intention to move for new trial; set aside or vacate judgment; amend or vacate proposed statement of decision." They contended the trial court improperly resolved the parentage case based on findings it made in the adoption case. They maintained the claims raised in the parentage case "remain unadjudicated," and they were denied their right to a trial on these claims. In a later filing, Grandparents requested an ex parte hearing for the court to extend the stay for requiring Grandparents to transfer V.P.'s custody to Father, and to shorten the time for a hearing on their pending requests. In support of their requests, Grandparents submitted L.L.'s declaration, V.P.'s medical records, and three sets of points and authorities.

During a hearing on April 27, 2021, the trial court revisited whether the adoption and parentage cases had been consolidated. The court reiterated the cases had been consolidated to the extent evidence lodged in the adoption case could be considered by the court in the parentage case. The court then denied Grandparents' ex parte requests and request for reconsideration, and vacated the hearing date for the new trial motion. The court ordered Grandparents to return V.P. to Father no later than May 2, 2021.[6]

On June 23, 2021, the trial court denied Grandparents' motion for a new trial. In refusing to revisit the order awarding Father sole custody of

---

[6] Although this court initially stayed the order requiring Grandparents to transfer custody of V.P. to Father in response to Grandparents' petition for writ of supersedeas, this court ultimately denied the petition and dissolved the stay on May 28, 2021. It appears V.P. was then returned to Father's home in Arizona and has remained there ever since.

V.P., the court stated: "The current Request for Order is the latest chapter in the vexatious, abusive litigation brought by Petitioner grandparents. This litigation has involved identical requests presented to multiple judicial officers." The court noted that while the appeal in the adoption case was pending with this court, Grandparents had filed two additional cases: a guardianship case and a case for grandparent visitation. The court further determined that any additional requests for custody or visitation would be stayed while the adoption case was pending on appeal.

Grandparents timely appealed.[7]

## DISCUSSION

Grandparents contend the trial court denied them their right to due process by rejecting the claims raised in the parentage action without holding an evidentiary hearing. They assert the court "improperly conflated the termination of parental rights issues in EAD000218 with the custody and parentage issues in EFL002713, believing the case was 'over' as soon as it denied the section 7822 petition." They conclude the trial court denied them

---

[7] Grandparents identify the trial court's March 17, 2021 judgment dismissing the adoption case as the judgment on appeal. However, this judgment was the subject of their prior appeal (*In re V.P.*, *supra*, D078780), and Grandparents lack a legal basis to bring multiple appeals from the same underlying judgment (*Jordan v. Malone* (1992) 5 Cal.App.4th 18, 21 [a party is entitled to one appeal from the final judgment in an action.]). Accordingly, we construe the appeal as being taken from the trial court's April 1, 2021 order awarding Father sole custody of V.P. (*Geffcken v. D'Andrea* (2006) 137 Cal.App.4th 1298, 1307 [notice of appeal is to be liberally construed in favor of its sufficiency, " 'so as to protect the right for appeal if it is reasonably clear what appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced.' [Citation.]"]; see also *Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371, 1377-1378 [final custody order is appealable].) Although the minute order awarding Father sole custody is unsigned, the trial court clarified at a later hearing that it did not contemplate further action and considered that order to be final.

8

their right to notice and an opportunity to be heard on the parentage case, and further erred in denying their request for post-order relief.

In response, Father asserts Grandparents as nonparents lacked standing to initiate custody proceedings in family court.[8] We agree and affirm the trial court's custody order on this basis.

1. *Relevant Legal Principles and Standard of Review*

The trial court may make a child custody order "that seems necessary or proper." (§ 3022.) Legal custody of a child grants the custodian "the right and the responsibility to make the decisions relating to the health, education, and welfare of a child." (§ 3003.) "The essence of custody is the companionship of the child and the right to make decisions regarding his care and control, education, health, and religion." (*Lerner v. Superior Court of San Mateo County* (1952) 38 Cal.2d 676, 681.)

Parents have a fundamental right to custody of their children. (*Santosky v. Kramer* (1982) 455 U.S. 745, 753.) Consistent with this right, courts apply a "parental preference doctrine" which provides that parents generally have the right to custody of their children over a third party. (*In re B.G.* (1974) 11 Cal.3d 679, 693-694, fn. 23.) However, this right is not absolute and is balanced against a child's "fundamental right . . . to 'have a placement that is stable [and] permanent.'" (*In re Jasmon O.* (1994) 8 Cal.4th 398, 419.)

---

[8] Father did not raise this standing argument in the trial court. Nevertheless, " ' " 'contentions based on a lack of standing involve jurisdictional challenges and may be raised at any time in the proceeding.' [Citation.] "Lack of standing negates existence of a cause of action and is not waived by failure to object; it can even be raised for the first time on appeal." [Citation.]' [Citation.]." (*Cummings v. Stanley* (2009) 177 Cal.App.4th 493, 501.)

9

Section 3041 provides that before granting custody of a child to a nonparent over the objection of a parent, the court must find clear and convincing evidence custody to a parent would be detrimental to the child and custody to the nonparent is in the best interest of the child.  (§ 3041, subds. (a), (b).)  The finding of detriment must be supported by clear and convincing evidence, but it does not require a showing of parental unfitness.  (§ 3041, subd. (c).)  Section 3041 further provides that if a preponderance of the evidence shows a nonparent has assumed the parental role for a substantial period of time by providing a stable home where the child's physical and emotional needs are met, this establishes the required showing that nonparental custody is in the best interest of the child and that parental custody would be detrimental.  (§ 3041, subds. (c), (d).)  A parent may rebut the evidence supporting custody with a nonparent by showing by a preponderance of the evidence that there would be no detriment from parental custody and that nonparental custody is not required to serve the best interest of the child.  (§ 3041, subd. (d).)

We generally review custody and visitation orders for abuse of discretion.  (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255; *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32.)  However, "[m]atters presenting pure questions of law, not involving resolution of disputed facts, are subject to the appellate court's independent review."  (*Suarez v. City of Corona* (2014) 229 Cal.App.4th 325, 332.)  Standing is a question of law to which we typically apply a de novo standard of review.  (*Fry v. City of Los Angeles* (2016) 245 Cal.App.4th 539, 548-549.)

2. *Grandparents as Nonparents Lacked Standing to Initiate These Custody Proceedings in Family Court*

Grandparents initiated these custody proceedings in family court to obtain custody of V.P. They asserted they were entitled to custody under section 3041, as they had assumed the parental role of V.P. for a substantial period of time, and had therefore established it was in V.P.'s best interests to remain in their custody and a transfer of custody to Father would be detrimental.

However, Grandparents lacked standing to initiate custody proceedings in family court under section 3041. "The custody provisions of the Family Code apply only in proceedings that are generally, if not invariably, initiated by the parents of a child. . . . [T]hey have been held not to provide an independent basis for subject matter jurisdiction. [Citation.] A nonparent seeking custody therefore lacks standing to initiate a custody proceeding under the Family Code. A guardianship petition under the Probate Code is the only judicial means for a nonparent to obtain custody when the parents have not themselves initiated a custody proceeding." (*Erika K. v. Brett D.* (2008) 161 Cal.App.4th 1259, 1269 (*Erika K.*).) In this case, since Father as the parent did not initiate these proceedings, Grandparents as the nonparents lacked standing "to initiate a custody proceeding under the Family Code." (*Id.* at p. 1269.) Instead, their remedy as nonparents seeking custody of their grandson was to pursue a guardianship case in the probate court. (*Ibid.*)

The circumstances considered by the appellate court in *Erika K.* are instructive. There, after the biological mother initiated custody proceedings to regain custody of her daughter who was in the care of a nonparent caregiver, the trial court awarded the caregiver custody under section 3041

11

even though the caregiver did not separately petition for guardianship. (*Erika K.*, *supra*, 161 Cal.App.4th at pp. 1265-1266.) The appellate court affirmed the custody award on appeal, concluding a guardianship petition was not a prerequisite for nonparent child custody. (*Id.* at p. 1269.) In reaching this conclusion, the court recognized guardianship petitions may be a more prevalent mode for awarding child custody to a nonparent under section 3041 as opposed to through family court proceedings, since section 3041 can only be raised by a nonparent in family court after a parent has already initiated a custody case. (*Erika K.*, at p. 1269.) Thus, unlike the situation in *Erika K.*, Grandparents in this case sought to initiate these proceedings themselves, which they lacked standing to do.

Grandparents assert they have standing to initiate a custody action under section 3041 because they qualify as V.P.'s "presumed parents." They contend that following the enactment in 2013 of section 7601, subdivision (c), a child may have a parent and child relationship with more than two parents. As such, any case that predates the current version of section 7601, such as *Erika K.*, has been superseded by the change in law.

Grandparents provide no authority, however, to support their assertion that the amendments to section 7601 in 2013 have any effect on the application of section 3041 in family court proceedings. For instance, while Grandparents contend *Erika K.* is no longer good law because it predates the amendments to section 7601 declaring that a child may have more than two parents, nowhere in the *Erika K.* opinion does the appellate court discuss section 7601 or whether a child may have a parent relationship with more than two parents. (*Erika K.*, *supra*, 161 Cal.App.4th at pp. 1265-1266.) Overall, Grandparents have not provided any arguments to convince us that

12

in light of the changes in 2013 to section 7601, section 3041 now confers a nonparent with standing to initiate custody proceedings in family court.

Grandparents' additional contention that as "presumed parents" they had standing to initiate family court proceedings under section 3041 is contradicted by the plain language of the statute. The statute repeatedly distinguishes between a "nonparent" and a "parent," and section 3041, subdivision (a) specifically provides for a custody award of a child to a "person other than a parent" over the objection of a "parent." Because section 3041 is expressly confined to custody claims brought by *nonparents*, Grandparents' contention they qualify as V.P.'s *parents* would render section 3041 inapplicable.

Moreover, Grandparents' assertion they meet the test for presumed parent status lacks merit. Section 7611, subdivision (d) provides presumed parent status if "[t]he presumed parent receives the child into their home and openly holds out the child as their natural child." A person requesting presumed parent status under section 7611, subdivision (d) must have a "fully developed parental relationship" with the child. (*R.M. v. T.A.* (2015) 233 Cal.App.4th 760, 776, italics omitted.) A "caretaking role" is not enough. (*Id.* at p. 777.) "By its terms, the statute requires an assumption of responsibility for the child that rises to the level of receiving the child into the home, and a commitment to the child demonstrated by an open acknowledgement of the child as his or her own." (*Ibid.*) Additionally, although the statutory scheme allows for recognition of more than two parents, courts will only do so in " ' "rare cases" in which a child "truly has more than two parents" who are parents 'in every way.' [Citation.]' [Citation.]" (*In re M.Z.* (2016) 5 Cal.App.5th 53, 65.)

Grandparents assert they meet the test of presumed parenthood because they took V.P. into their home.  They appear to concede, however, that they did not hold out V.P. as their natural child.  Instead, they contend that although they are not V.P.'s biological parents, they may still be considered as his presumed parents.

However, courts have rejected the application of presumed parent status under section 7611, subdivision (d) where a grandparent assumed a parental role but never claimed the child as their own.  (*In re Bryan D.* (2011) 199 Cal.App.4th 127, 139-140; *In re Jose C.* (2010) 188 Cal.App.4th 147, 162 (*Jose C.*).)  As explained by the appellate court in *Jose C.*, although a grandparent may act as the "functional equivalent" of a child's parent, "that alone does not satisfy the test for presumed [parent] status.  Many people may perform the function of a parent at various points in a child's life, including grandparents, stepparents, foster parents, extended family members, and so on.  Doing so does not make any of them a presumed parent. That status is defined by statute, and it includes openly holding out the child as one's natural child.  (Fam. Code, § 7611, subd. (d).)." (*Jose C.*, at p. 162.)

Additionally, although biological ties to the child are not always a prerequisite for establishing presumed parent status, the California Supreme Court has applied section 7611, subdivision (d) presumed parent status to a nonbiological parent in cases where there were no competing paternity interests.  For example, in *In re Nicholas H.* (2002) 28 Cal.4th 56, 63 (*Nicholas H.*), the Supreme Court determined a nonbiological father met the requirements for presumed father status where no one had raised a conflicting claim to being the child's father and to do otherwise would produce the "harsh result" of leaving the child fatherless.  The Supreme Court revisited the issue in *Elisa B. v. Superior Court* (2005) 37 Cal.4th 108, 122-

14

123 (*Elisa B.*), a case involving two same sex parents only one of whom was biologically related to the children. The high court determined the nonbiological parent should be recognized as a presumed parent under section 7611, subdivision (d), because a contrary finding would leave the children without a father and impose the financial burden of supporting the children on the county. (*Ibid.*)

In this case, V.P. is not fatherless. In fact, Father raised a competing custody claim in response to Grandparents' initiation of these proceedings, asserting he was entitled to sole custody as V.P.'s father. Additionally, the evidence does not support a finding that Father has abdicated his parental role. As we explained in our prior opinion: "Father was not absent from V.P.'s life while V.P. was in Grandparents' care. Although Father did not attend V.P.'s medical appointments, text messages in the record show Father and Grandparents regularly communicated about V.P.'s health and progress. Father also visited V.P. for a few days at least once [a] month after Mother's death, and Father provided for V.P.'s necessities when he was in his care. Father's visits with V.P. increased in August or September 2019, when V.P. began to spend half of his time with Father in Arizona. Then, in March 2020, when confronted with the possibility he would become separated from his son because of the corona virus pandemic, Father drove from Arizona to retrieve V.P. in California." (*In re V.P.*, *supra*, D078780.) Thus, unlike the circumstances in *Nicholas H.* and *Elisa B.*, the absence of a formal declaration that Grandparents are V.P.'s presumed parents would not leave V.P. without parental support, as Father has been supporting V.P. in his capacity as a parent since V.P.'s birth.

In sum, Grandparents as nonparents lacked standing to initiate custody proceedings in family court under section 3041. Their argument they

15

meet the requirements for presumed parent status renders section 3041 inapplicable, and in any event, they do not present a legally cognizable claim to presumed parent status. Accordingly, Grandparents' status as nonparents and inability to establish standing to pursue their claims in family court is fatal to their due process arguments.

## DISPOSITION

The trial court's custody order entered on April 1, 2021 is affirmed.


McCONNELL, P. J.

WE CONCUR:


HUFFMAN, J.


O'ROURKE, J.