Filed 3/7/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JACK FRY et al., | B259791 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BS140201) |
| v. | |
| CITY OF LOS ANGELES, | |
| Defendant and Appellant; | |
| BOARD OF FIRE AND POLICE PENSION COMMISSIONERS OF THE LOS ANGELES FIRE AND POLICE PENSIONS, | |
| Real Party in Interest and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Joanne O'Donnell, Judge. Reversed and remanded.

Renne Sloan Holtzman Sakai, Arthur A. Hartinger, Linda M. Ross, Jennifer L. Nock, Kevin P. McLaughlin; Meyers Nave, Harry W.R. Chamberlain II, Anya J. Freedman for Defendant and Appellant.

Irell & Manella, David A. Schwarz, Josh Geller for League of California Cities as Amicus Curiae on behalf of Defendant and Appellant.

Rosen Bien Galvan & Grunfeld, Ernest Galvan, Margot Mendelson, Jenny S. Yelin for Plaintiffs and Respondents.

Mastagni Holstedt, David E. Mastagni, Issac S. Stevens, Ian B. Sangster for Los Angeles Airport Peace Officers' Association, as Amicus Curiae on behalf of Plaintiffs and Respondents.

Reed Smith, Harvey L. Leiderman, Jeffrey R. Rieger, May-tak Chin for Real Party in Interest and Respondent.

—————————————

## SUMMARY

Appellant City of Los Angeles (City) appeals from the trial court's issuance of a writ of mandate authorizing the Board of the Los Angeles Department of Fire and Police Pension Commissioners (Board)[1] to exercise its discretion, previously delegated to it by the City in an ordinance, to set the maximum subsidy contributed by the City to police and firefighter retirees' insurance premiums without regard to later City ordinances "freezing" the subsidy until review and increase by the City Council and requiring payment of a voluntary contribution to join an opt-in program.

We previously stayed the trial court's writ of mandate and all proceedings below, pending this appeal. (*Fry v. City of Los Angeles* (Nov. 12, 2014, B259814).)

We now reverse.

## FACTUAL BACKGROUND

### I.      1974 Charter Amendment Authorizing Creation of Subsidy Program

In 1974, Los Angeles voters amended the City Charter to "enable the City Council of the City of Los Angeles to provide by ordinance a program . . . whereby" retired City police officers and firefighters "may become eligible to have subsidy payments made on

_____

[1] The Board was named as real party in interest in the petition below for a writ of mandate. On appeal, the Board takes no position on the issues, stating that it is bound to follow the City's Administrative Code unless and until instructed by a court otherwise. The Board is a separate entity from the boards administering the other retirement systems within the City, which include the Los Angeles City Employees Retirement System for civilian employees and the Water and Power Employees' Retirement Plan. We hereby deny respondents' May 21, 2015, motion for judicial notice of the biographies of five members of the Board.

2

their behalf for health insurance . . . or health care plan coverage" "as determined by the City Council and subject to such conditions of entitlement as may be set forth in any ordinance adopted in accordance with the provisions of this section." (Charter, art. XVIII, former §§ 189(a) & 190.50(a).) The 1974 Charter Amendment limited the maximum amount of the subsidy the Council could authorize, stating in sections 189(c) and 190.50(c) that "[a]n ordinance adopted pursuant to this section may not provide for a subsidy . . . the total amount of which . . . would be in excess of" either the maximum available subsidy for retired civilian employees or the subsidy allowed to active police officers and firefighters. (Charter, art. XVIII, former §§ 189(c) & 190.50(c).)

The 1974 Charter amendment also provided that the Board of Pension Commissioners would administer "[a]ny subsidy program adopted by ordinance pursuant to this section" and "in its discretion, may by resolution increase or decrease the amount of subsidy payments on the following conditions only: (1) to reflect changes in subsidies provided to active members or (2) to offset any increases or decreases in the level of benefits referred to [earlier in section] . . . or the cost thereof as a result of changes in existing benefits . . . ." (Charter, art. XVIII, former §§ 189(c) & 190.50(c).)

## II.     Original Ordinance

In 1975, the City Council passed Ordinance No. 147,014 (Original Ordinance) to implement the authorized subsidy program in 1975. The Original Ordinance established that, subject to the 1974 Charter Amendments limitations and provisions, "the maximum monthly subsidy [for police and fire retirees] shall be the amount provided by the Council for [civilian retirees]." The Original Ordinance also provided that Board of Pension Commissioners responsible for administering the program may, in its discretion, "increase or decrease the maximum monthly amount of the health insurance subsidy in accordance with the authority conferred" in the 1974 Charter Amendments provisions.

## III.    Charter Amendment Removing Limitations on Council's Authority to Establish Subsidy

In 2005, City voters amended the Charter sections governing the subsidy program for retired police and firefighters to eliminate the limits on the Council's authority to

3

establish the maximum subsidy. Specifically, the 2005 Charter Amendment deleted former sections 189(c) and 190.50(c) which capped the maximum subsidy the Council could establish to either the amount of subsidy received by active police officers and firefighters or the maximum available subsidy for retired civilian retirees. It replaced that provision with: "The Council may establish by ordinance the maximum subsidy payments for beneficiaries under any programs established by the Council . . . ." (Charter, art. XI, §§ 1330(c), 1428(c), 1518(c) & 1618(c).)[2]

The 2005 Charter Amendment also deleted the provision from the 1974 Charter Amendments allowing the Board to increase or decrease the subsidy, in its discretion, only under the conditions specified in the 1974 Charter Amendments. Instead, the amendment replaced that provision with: "The Council may by ordinance authorize the Board to increase or decrease the subsidy payments pursuant to factors, standards, and limitations prescribed in the ordinance." (Charter, art. XI, §§ 1330(e), 1428(e), 1518(e) & 1618(e).)

## IV.    2005 Fixed Subsidy Amount Ordinance

Pursuant to the authority granted in the 2005 Charter Amendment, the City Council passed Ordinance No. 176731 (Subsidy Ordinance), establishing "the maximum monthly subsidy towards the health insurance premium, effective July 1, 2005 . . . is fixed at $735.38 per month."

## V.    Delegation Ordinance

A year later, in 2006, the Council passed Ordinance No. 177630 (Delegation Ordinance) amending subsection (e) of section 4.1154 of the Los Angeles Administrative Code. In the Delegation Ordinance, the City Council noted that the maximum monthly subsidy, effective July 1, 2005, "is fixed at $735.38," and authorized the Board "to make discretionary changes, on an annual basis beginning in 2006, to the maximum monthly subsidy," so long as no increase exceeded the lesser of a 7 percent increase or the actuarial assumed rate for medical inflation. The Delegation Ordinance also stated if the

---

[2] In the new City Charter, sections 189 and 190.50 have been renumbered as sections 1330, 1428, 1518 and 1618, reflecting four different pension plan tiers.

Board's changes exceed this limitation, it must be submitted to the Council for review accompanied by an actuarial report; if the Council rejected a subsidy set by the Board, "the Council shall determine the amount, if any, by which the subsidy shall be increased and shall adopt this increase by resolution"; and if the Board fails to act timely to grant an increase or if the Council desires to approve an increase in excess of the amount authorized by the Board, the Council retains the right to establish by ordinance the maximum subsidy.

## VI.    2006 to 2011 Board Subsidy Increases

From 2006 to 2011, the Board, exercising the delegation of authority granted to it "to increase or decrease the maximum monthly amount of the health insurance subsidy," increased the subsidy each year.[3]  On March 3, 2011, the Board voted to increase the monthly subsidy to $1,097.41 effective July 1, 2011.

## VII.   2011 Freeze Ordinance

On July 25, 2011, the Council passed Ordinance No. 181814 (Freeze Ordinance), adding a new section 4.1166 to the Los Angeles Administrative Code which froze the maximum subsidy at "the rate in effect as of July 1, 2011."  (L.A. Admin. Code, § 4.1166.)  The freeze applied to employees who retired after July 15, 2011, who opted not to make a contribution for vesting increases in the maximum subsidy as allowed by an applicable memorandum of understanding.  The Freeze Ordinance stated that "[t]he freeze established by this Section may be revisited periodically by the City Council, with appropriate discussions with the affected labor organizations, to determine whether, in the Council's discretion, the freeze may be lifted or adjusted in light of improving economic conditions, or other factors."

---

[3] Specifically, the Board passed resolutions to increase the amount of the monthly subsidy from $735.38 in 2005 to $782.44 in 2006, to $837.21 in 2007, to $895.81 in 2008, to $958.52 in 2009, and to $1,025.62 in 2010.

## VIII. Letters of Agreement With Unions

Between June and August 2011, the City entered into Letters of Agreement (LOA's) with the unions representing fire fighters and police officers.[4] The LOA's recited that "the parties have a dispute as to whether retiree health benefit increases provided in the Los Angeles Administrative Code ('LACC') are a vested benefit" and described the freeze on the subsidy. Thus, "in order to resolve this dispute and in mutual efforts to provide permanent and stable funding for the retiree health benefit," members of the unions would have the "option to voluntarily contribute a maximum of two percent (2%) of their base salary to [the pension plan] to defray a portion of the City's cost of providing retiree health benefits," and the parties agreed that employees who opted in "to make the two percent (2%) maximum contribution from their base salary shall be entitled to receive upon retirement the retiree health benefit in effect as of the date of the effective date of this LOA and thereafter the maximum amount of each annual increase presently authorized by the LACC" and the "entitlement to retiree health benefits increases shall be a vested right for those employees."[5]

## IX. Opt-In Ordinance

On October 5, 2011, the City Council passed Ordinance No. 181893 (Opt-In Ordinance) which amended section 4.1166 of the Administrative Code to reflect that the freeze did not apply to "[e]mployees who irrevocably opt to make voluntary Additional Contributions in exchange for vested rights to increase in subsidies . . . ."

---

[4] The Los Angeles Police Protective League entered an LOA dated June 24, 2011, the United Firefighters of Los Angeles City entered an LOA dated July 1, 2011, the Los Angeles Port Police Association entered an LOA dated July 30, 2011, the Los Angeles Port Police Command Officers Association entered an LOA dated August 5, 2011, the Los Angeles Police Command Officer's Association entered an LOA dated August 9, 2011, and Los the Angeles Fire Chief Officer's Association entered an LOA dated August 9, 2011.

[5] The meaning of the LOA's language is the subject of another litigation. (*Los Angeles Police Protective League v. Board of Fire and Police Pension Commissioners for the City of Los Angeles* (June 24, 2014, B247539) [nonpub. opn.].)

6

## Procedural Background

On November 1, 2012, respondents on appeal—four City employees in the fire and police departments and the Los Angeles Retired Fire & Police Association, Inc.—filed a petition for writ of mandate, as well as a complaint for promissory estoppels, restitution, violation of the Charter, injunctive relief and declaratory relief. The petition alleged that through the Freeze Ordinance and the Opt-In Ordinance (Ordinance Nos. 181814 & 181893), the City "permanently froze the maximum health insurance premium subsidy available" to police officers and firefighters who retire after July 14, 2011, and made periodic increases to the subsidy contingent on the employee's agreement to make a contribution of their post-tax salary and that these ordinances impaired the "vested contractual rights of these employees to receive increases to the subsidy without the payment of any additional contribution" in violation of the California Constitution. According to the petition, the 1974 Charter Amendment created a "vested benefit" based on the analysis of the then city attorney and a later city attorney. Similarly, the petition contended that upon enactment of the 2005 Charter Amendment and the Delegation Ordinance (Ordinance No. 177630), police officers and firefighters earned "a vested contractual right to the system for providing increases to the maximum monthly health insurance subsidy conferred by those legislative changes." According to the petition, the City "has not—through legislation or otherwise—reserved the right to freeze or impair in any manner" the subsidy and the Freeze Ordinance and Opt-In Ordinance "impermissibly impair the vested contractual rights" of respondents. Thus, pursuant to Article I, section 9 of the California Constitution which prohibits the passage of any "law impairing the obligation of contracts," the petition seeks writ of mandate compelling the City "to provide increases" to the subsidy without regard to the Freeze Ordinance and the Opt-In Ordinance or to stay enforcement of those ordinances.

After briefing and argument, the trial court on July 28, 2014, ruled on the petition granting in part respondents' request for a writ of mandate. The trial court rejected respondents' "assertion that they have a vested right to increases in the amount of the health insurance subsidy." However, the trial court granted a writ "authorizing the Board

7

to exercise the discretion delegated to it under LAAC § 4.1154(e), notwithstanding LAAC § 4.1166's freeze" and explained that the basis for the grant was the trial court's "determination that § 4.1166 is unconstitutional as it substantially impairs Petitioners' vested right to a health insurance subsidy." The trial court noted that the writ "only permits the Board to disregard § 4.1166; it does not mandate any other action."[6]

On September 5, 2014, the writ of mandate was entered authorizing the Board "to exercise the discretion delegated to it under [the Delegation Ordinance] without regard to [the Freeze and Opt-In Ordinances]." The City timely appealed.

On November 3, 2014, the City filed in this Court a petition for a writ of supersedeas and other relief with this Court seeking a stay of the trial court's writ of mandate. After a temporary stay and briefing, we issued a writ of supersedeas on November 12, 2014. Our order stated, "[e]xecution of the September 5, 2014 order of respondent court and all further trial proceedings . . . are hereby stayed pending appeal."

## DISCUSSION

The City contends that the trial court's grant of a writ of mandate was in error because the City Charter grants the City Council the authority to set the amount of the subsidy and, as a consequence, the Delegation Ordinance can neither restrict the Council's authority nor create a vested right to a Board-determined subsidy as such would conflict with the Charter. We agree and reverse.

I.      **Standard of Review**

Under Code of Civil Procedure section 1085, subdivision (a), the trial court may issue a writ of mandate "to any . . . person . . . to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party is unlawfully precluded by that . . . board, or person."

---

[6] The court took no action on respondents' claims for promissory estoppels and restitution, transferring those matters for assignment to a general trial court for "all matters not related to the writ."

8

"A traditional writ of mandate under Code of Civil Procedure section 1085 is a method for compelling a public entity to perform a legal and usually ministerial duty. [Citation.] The trial court reviews an administrative action pursuant to Code of Civil Procedure section 1085 to determine whether the agency's action was arbitrary, capricious, or entirely lacking in evidentiary support, contrary to established public policy, unlawful, procedurally unfair, or whether the agency failed to follow the procedure and give the notices the law requires. [Citations.] 'Although mandate will not lie to control a public agency's discretion, that is to say, force the exercise of discretion in a particular manner, it will lie to correct abuses of discretion. [Citation.] In determining whether an agency has abused its discretion, the court may not substitute its judgment for that of the agency, and if reasonable minds may disagree as to the wisdom of the agency's action, its determination must be upheld. [Citation.]'" (*Klajic v. Castaic Lake Water Agency* (2001) 90 Cal.App.4th 987, 995, fn. omitted.)

"'In reviewing a trial court's judgment on a petition for writ of ordinary mandate, we apply the substantial evidence test to the trial court's factual findings.' [Citation.] Thus, foundational matters of fact are conclusive on appeal if supported by substantial evidence." (*Klajic v. Castaic Lake Water Agency*, *supra*, 90 Cal.App.4th at pp. 995-996.) We independently review findings on legal issues and the interpretation of a statute is a legal issue subject to de novo review. (*Farahani v. San Diego Community College Dist.* (2009) 175 Cal.App.4th 1486, 1491.)

## II.     Contract Clause

"Under the California Constitution, a 'law impairing the obligation of contracts may not be passed.' (Cal. Const., art. I, § 9.) Similarly, under the federal Constitution, 'No state shall . . . pass any . . . law impairing the obligation of contracts . . . .' (U.S. Const., art I, § 10, cl. 1.)" (*San Bernardino Public Employees Assn. v. City of Fontana* (1998) 67 Cal.App.4th 1215, 1222.) The contracts clause limits the power of public entities to, by enacting a law, unilaterally modify their own contracts with other parties.

The terms and conditions of public employment—unlike those of private employment—are generally established by statute or ordinance, rather than by contract.

9

(*White v. Davis* (2003) 30 Cal.4th 528, 564.)  However, "with regard to at least certain terms or conditions of employment that are created by statute, an employee who performs services while such a statutory provision is in effect obtains a right, *protected by the contract clause,* to require the public employer to comply with the prescribed condition." (*Id.* at pp. 564-565.)  California law treats a pension as an element of compensation which is a vested contractual right.  (*Id.* at p. 565; *Betts v. Board of Administration* (1978) 21 Cal.3d 859, 863.)  "'By entering public service an employee obtains a vested contractual right to earn a pension on terms substantially equivalent to those then offered by the employer.'"  (*California Assn. of Professional Scientists v. Schwarzenegger* (2006) 137 Cal.App.4th 371, 383.)

   However, obtaining a vested contractual right to earn a pension upon acceptance of public employment does not mean that all terms governing the pension system then in effect become vested contractual rights of the employee.  "[A]n employee may acquire a vested contractual right to a pension but . . . this right is not rigidly fixed by the specific terms of the legislation in effect during any particular period in which he serves."  (*Kern v. City of Long Beach* (1947) 29 Cal.2d 848, 855.)  Thus, we must analyze "[t]he nature and extent of the city's obligation" as ascertained from the language of the pension provisions and the judicial construction of similar legislation.  (*Id.* at p. 850.)

   "Under well recognized principles of law, a legislative act which would, if construed to be a contract, limit or extinguish the power of the government completely to control the subject matter of the enactment, will not be so construed unless the legislative intention to create a contract clearly appears, and all doubts must be resolved in favor of the continuance of the power of the government."  (*Taylor v. Board of Education* (1939) 31 Cal.App.2d 734, 742; *United States Trust Co. v. New Jersey* (1977) 431 U.S. 1, 17, fn. 14 [statute will be treated as a contract with binding obligations when the statutory language and circumstances accompanying its passage clearly "evince a legislative intent to create private rights of a contractual nature enforceable against the State"].)  "'Thus, it is presumed that a statutory scheme is not intended to create private contractual or vested rights and a person who asserts the creation of a contract with the state has the burden of

10

overcoming that presumption.'" (*Retired Employees Assn. of Orange County, Inc. v. County of Orange* (2011) 52 Cal.4th 1171, 1185-1186, 1888 [in deciding whether private contractual rights should be implied from legislation, a court should "'proceed cautiously both in identifying a contract within the language of a . . . statute and in defining the contours of any contractual obligation'"].) In other words, a party asserting a violation of the contract clause must show a clear and unambiguous constitutional violation. (*Floyd v. Blanding* (1879) 54 Cal. 41, 43.)

Here, the trial court correctly rejected respondents' contention that they had a vested right to increases in the subsidy. As the trial court noted, the Delegation Ordinance granted the Board discretion to change the level of the subsidy and placed a cap on the amount of any increase, but did not require that the subsidy increase. The trial court nonetheless found that respondents had a vested right to a subsidy as determined by the Board exercising discretion under the Delegation Ordinance. The City contends the trial court erred in granting the writ of mandate on this basis because, inter alia, the Delegation Ordinance did not create a vested right to a Board-determined subsidy. We agree.

The 2005 Charter Amendment eliminated the limits on the Council's authority to set the subsidy from the 1974 Charter Amendments which in effect capped the maximum possible subsidy to the lower of the civilian retiree subsidy or the active police officer and firefighter subsidy; instead the new charter amendments granted the Council broad authority, stating that "[t]he Council may establish by ordinance the maximum subsidy payments for beneficiaries under any programs established by the Council . . . ." (Charter, art. XI, §§ 1330(c), 1428(c), 1518(c) & 1618(c).) Significantly, the 2005 Charter Amendment also removed the delegation in the 1974 Charter Amendments to the Board of Pension Commissioners the discretion to increase or decrease the subsidy under conditions delineated in those amendments; instead, under the 2005 Charter Amendments, it now provided that "[t]he Council may by ordinance authorize the Board to increase or decrease the subsidy payments pursuant to factors, standards, and limitations prescribed in the ordinance." (Charter, art. XI, §§ 1330(e), 1428(e), 1518(e)

11

& 1618(e).)  In other words, the "factors, standards, and limitation" to be considered by the Board in increasing or decreasing the subsidy payments would be prescribed by the Council in an ordinance just as the authority—if any—of the Board to make increases or decreases to the subsidy would be authorized by the Council in an ordinance.

Exercising its authority under the 2005 Charter Amendment to set the subsidy amount, the City Council passed the Subsidy Ordinance establishing that the subsidy "is fixed at $735.38 per month" effective July 1, 2005.  The Subsidy Ordinance did not provide for a fluctuating subsidy amount and did not set any schedule for when the subsidy would be reviewed for possible increase or decrease, and it also did not exercise the City Council's authority under the 2005 Charter Amendment to delegate to the Board the authority to change the subsidy amount.

A year later, in 2006, the City Council passed the Delegation Ordinance which, after noting that the subsidy then in effect was fixed at $735.38, authorized the Board to make discretionary changes to the amount.  The Delegation Ordinance, inter alia, delegated to the Board authority to making changes on an annual basis beginning in 2006, but limited the Board's authority by capping any discretionary increase by the Board to the lesser of actuarial assumed rate for medical inflation[7] or 7 percent unless the Board submitted the change to the Council, and reserved to the City Council the right to reject the Board's subsidy amount and for the Council to set the subsidy by resolution. The Delegation Ordinance states that "[n]otwithstanding the authority given to the Board in this subsection, the Council retains the right to establish, by ordinance, the maximum monthly subsidy either if the Board fails to act timely to grant an increase or if the Council desires to approve an increase in excess of the amount authorized by the Board." Thus, while the Delegation Ordinance described situations in which the Council might re-assert its authority to set the subsidy despite or instead of a decision from the Board, it did not state that the delegation of authority to the Board was absolute or in perpetuity or

---

[7] The Delegation Ordinance set a cap only on the allowable increase in the subsidy as set by the Board in its discretion; it did not prescribe a formula that automatically set the increase *at the rate* of the medical inflation with a 7 percent cap.

that the Council was divesting itself of authority to set the subsidy under other circumstances.[8]

Generally, "legislation in California may be said to create contractual rights when the statutory language or circumstances accompanying its passage 'clearly ". . . evince a legislative intent to create private rights of a contractual nature enforceable against the [governmental body]."'" (*Retired Employees Assn. of Orange County, Inc.*, *supra*, 52 Cal.4th at p. 1187.) Taken together, the 2005 Charter Amendments and the later Subsidy Ordinance and Delegation Ordinance do not evince a "legislative intent" to create a vested right to a Board-determined subsidy amount. Rather, they evince an intent to reserve to the City Council the final decision authority over the subsidy.

The cases cited by the trial court and respondents are not to the contrary. In *Carrancho v. California Air Resources Board* (2003) 111 Cal.App.4th 1255, 1268, the court held that mandamus may be used to compel an agency to exercise its discretion, but not to force the exercise of the discretion in any particular manner or to reach a particular result. Thus, while the case affirmed the power of the courts to compel the exercise of discretion when such discretion is authorized by legislation, it does not address whether legislation authorizing the use of discretion creates a vested right so that the authorizing legislation cannot be unilaterally modified by the public entity. In *Valdes v. Cory* (1983) 139 Cal.App.3d 773, 782, 787, the statute from which the vested right arose provided that the rates for public employer contributions to fund pension benefits "shall be adjusted thereafter from time to time by the board pursuant to actuarial valuation of the liability for benefits" and thus did not involve the exercise of discretion by the board in setting the contribution rates. (See *Board of Administration v. Wilson* (1997) 52 Cal.App.4th 1109, 1119 [the relevant statute directed the board to make actuarial calculations of the funds and liabilities of the system and the appropriate contribution rates to achieve equality and therefore did not involve the exercise of discretion by the board]; *Int'l Ass'n of*

---

[8] Indeed, as amicus curiae League of California Cities notes, a delegation of legislative function to an unelected body requires adequate safeguards such as the revocability of such delegation.

*Firefighters v. City of San Diego* (1983) 34 Cal.3d 292, 299-300 [based on valuations and actuarial tables, board to revise rates of employee contributions as necessary to provide the benefits].)

By passing the Freeze Ordinance in July 2011, the City Council in effect revoked its delegation of authority to the Board, exercised its own discretion and authority to set the subsidy, and fixed the subsidy at the July 1, 2011 amount. These actions were within the City Council's authority under the 2005 Charter Amendments. The Freeze Ordinance maintains the Council's discretion to set the subsidy amount, stating that the "freeze established by [it] may be revisited periodically by the City Council . . . to determine whether, in the Council's discretion, the freeze may be lifted or adjusted . . . ." To the extent respondents assert a vested right to an annual discretionary review of the subsidy amount by the Council, the 2005 Charter Amendment does not require that the Council exercise its discretion on any set schedule. However, we note that when delegating the authority to set the subsidy to the Board, the City Council prescribed an annual review for the discretionary changes. (L.A. Admin. Code, § 4.1154, subd. (e).) Based on this ordinance, the City Council presumably viewed an annual review to be a reasonable interval and we agree.

While freezing the subsidy may have been appropriate under the circumstances existing in July 2011, the City Council must continue to reasonably exercise its discretion to set the subsidy, including reviewing the subsidy to determine what changes to the subsidy, if any, are appropriate. An obligation to review the subsidy does not equate to an obligation to increase the subsidy and we make no prejudgment on how the Council exercises its broad discretion to set the subsidy.

The trial court erred in granting respondents' petition for a writ of mandamus. "The requirement of a 'clear showing' that legislation was intended to create the asserted contractual obligation [citation] should ensure that neither the governing body nor the public will be blindsided by unexpected obligations." (*Retired Employees Assn. of Orange County, Inc.*, *supra*, 52 Cal.4th at pp. 1188-1189.) Respondents did not carry

14

their heavy burden of demonstrating a clear intent in the Delegation Ordinance to create a vested right to a Board-determined subsidy.

## DISPOSITION

The order granting the writ of mandate is reversed.  The matter is remanded to the trial court for proceedings consistent with this opinion.  Appellant is to recover its costs on appeal.

CERTIFIED FOR PUBLICATION



                                        CHANEY, Acting P. J.


We concur:


        JOHNSON, J.


        LUI, J.