Filed 3/20/26; Certified for Publication 4/16/26 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NNN CAPITAL FUND I, LLC, | |
| Plaintiff and Respondent, | G064487 |
| v. | (Super. Ct. No. 30-2017-00910991) |
| TODD A. MIKLES et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from a judgment of the Superior Court of Orange County, David J. Hesseltine, Judge. Vacated and remanded with directions. Appellants' and respondent's requests for judicial notice. Granted.

Thomas E. Walling for Defendants and Appellants.

Catanzarite Law, Kenneth J. Catanzarite and Tim James O'Keefe for Plaintiff and Respondent.

\* \* \*

This case represents the collision of two basic tenets of the law: The first is that jurisdiction is never waived and can be raised at any time, including for the first time on appeal. The second is that an arbitration award can only be challenged on very limited grounds and must be upheld if those grounds do not exist, even if the award is based on an error of law. The majority opinion follows the first tenet, and the dissent the second.

Purported representatives of respondent NNN Capital Fund I, LLC (Cap Fund), claiming to be the company's liquidating trustees, brought an action against appellants Todd A. Mikles, SCMG Liquidation, LLC (SCMG), SSMF Liquidation, LLC (collectively, appellants), and various other defendants, claiming breach of fiduciary duty and fraud. The trial court ordered the claims to arbitration. Appellants filed a motion to dismiss the arbitration based on lack of standing of the purported liquidating trustees, which was denied by the arbitrator. The arbitrator issued an award in favor of Cap Fund, which was affirmed by the court.

On appeal, appellants argue the arbitrator and trial court lacked jurisdiction over the action because it was initiated and prosecuted by individuals who were unauthorized to represent Cap Fund. More specifically, appellants contend the purported representatives, Tyrone (Tye) Wynfield and Mary Jo Saul, lacked standing to bring claims on behalf of Cap Fund because they were not elected in accordance with the terms of the company's operating agreement. If the purported representatives did not have standing, the court and arbitrator lacked jurisdiction over the case,[1] and it should have been dismissed at the outset and not sent to arbitration. We conclude the

---

[1] As discussed in more detail below, we grant appellants' and respondent's requests for judicial notice of documents pertinent to assessing justiciability.

factual dispute whether Wynfield or Saul had standing to bring the instant action on Cap Fund's behalf, therefore, remains unresolved. Accordingly, we vacate the judgment and remand to the trial court with directions that it consider whether Wynfield and Saul had standing.

FACTS

*A. Factual Background*

In 2008, Cap Fund was formed to provide short-term financing to affiliated borrowers for real estate syndications. Cap Fund obtained membership through a private placement memorandum which provided Cap Fund would be professionally managed by NNN Realty Investors, LLC (NNNRI). By 2011, in the wake of a widespread recession, three of Cap Fund's loans (the Notes), which were unsecured and short-term, were outstanding and nonperforming.

In August 2011, Mikles was appointed president of NNNRI. After his appointment, several of Cap Fund's members told him they wished to wrap up Cap Fund and its outstanding Notes. Mikles proposed that Sovereign Strategic Mortgage Fund, LLC (SSMF), which he controlled, would purchase the Notes. Cap Fund decided to sell the Notes to SSMF for a discount and obtain new notes from SSMF at 8 percent interest, each with a short maturity date and periodic interest payments.

Disclosures regarding the Note sale were provided to Cap Fund's members. The sale of two of the Notes was included in a proposed "Amendment No. 1 to the Limited Liability Company Agreement" that was presented to the members for approval and approved by 77 percent of Cap Fund's members; the third Note was sold at the same time and at a similar discount. Amendment No. 1 also required that Cap Fund's manager, NNNRI,

would resign upon the sale of the Notes and be replaced by SCMG. After acquiring the Notes, SSMF negotiated a deal to sell them.

On December 18, 2015, SCMG, Cap Fund's manager, dissolved the company under sections 11.1.1. and 11.1.2 of the operating agreement by distribution of all the assets of the company to its members and cessation of Cap Fund's activities. The members were subsequently issued Schedule K-1's as part of Cap Fund's tax returns, showing their ownership percentages as 0 percent at the end of 2015. All of the members accepted the repayment of the Notes and the final distribution proceeds.

Cap Fund members Wynfield and John Weiss were apparently unhappy with the company's management, alleging that the sale of the Notes was a breach of fiduciary duty. In December 2015, Wynfield and Weiss purported to conduct a vote of Cap Fund members to appoint themselves as "liquidating trustees." The ballots state as follows:

"VOTE AND/OR DIRECTION AND/OR APPLICATION BY MEMBER THAT JOHN WEISS AND TYE WYNFIELD BE APPOINTED LIQUIDATING TRUSTEE OF NNN CAPITAL FUND I, LLC

"By my signature below I vote and/or direct and/or apply as to 100 [percent] of the membership interests attributable to me that John Weiss and Tye Wynfield be appointed Liquidating Trustee *by the court* for NNN CAPITAL FUND I, LLC (the "Company") to wind up the Company's affairs in accordance with [(Del. Code Ann. tit. 6, § 18-803)] (the text of which is below). The liquidating trustees shall have full power and authority to pursue any and all Company assets, claims, choses in action and remedies in addition to all other powers of such liquidating trustees as are available under Delaware law.

4

"Delaware law provides: (a) Unless otherwise provided in the limited liability company agreement, [. . .] but the Court of Chancery, upon cause shown, may wind up the limited liability company's affairs upon application of any member or manager, or the member's personal representative or assignee, and in connection therewith, may appoint a liquidating trustee. Unless otherwise provided in a limited liability company agreement, a limited liability company whose original certificate of formation was filed with the Secretary of State and effective on or prior to July 31, 2015, shall continue to be governed by this subsection as in effect on July 31, 2015. [(Del. Code Ann. tit. 6, § 18-803)] (West)." (Italics added.)

Under the terms of Cap Fund's operating agreement, not all members are qualified to vote. Section 9.2 of Cap Fund's operating agreement provides that members who received their interest as transferees, such as when the admitted member died, have no right to vote on company matters unless they are admitted as a "substituted member," pursuant to the procedures set forth in the operating agreement.

The operating agreement provides for several conditions which must be fulfilled to become a substitute member: (1) obtaining the consent of Cap Fund's manager under section 9.2.2; and (2) providing a written assignment and other documentation supporting the transfer and paying a transfer fee under section 9.2.1. None of the transferees of Cap Fund interests ever applied to be admitted as substitute members.

After the ballots were tallied, Wynfield claimed he was elected, by a majority vote of the members of Cap Fund, to be its liquidating trustee. However, despite the express language of the ballots, which stated the vote was to seek to have *a court* appoint Weiss and Wynfield as liquidating trustees, neither Weiss nor Wynfield ever applied to the Delaware Court of

5

Chancery or any other court to dissolve Cap Fund. Wynfield admitted that he never sought court approval to be appointed liquidating trustee. No court ever appointed Wynfield or anyone else to be liquidating trustee.[2]

A later examination of the ballots for the alleged December 2015 vote apparently determined that all the ballots, including those of members not entitled to vote on company matters per the terms of Cap Fund's operating agreement, were counted in the vote totals. Exclusion of the members ineligible to vote apparently left Wynfield with 44 percent of the votes, less than the 50 percent required by the operating agreement.

After Wynfield died in December 2019, another election was held in March 2020 purporting to appoint Wynfield's widow, Mary Jo Saul, as a new liquidating trustee. This purported election also allegedly included votes of members who were not qualified to vote under the terms of Cap Fund's operating agreement. A later examination of the ballots for the March 2020 vote allegedly demonstrated that Saul obtained the votes of 37 percent of qualified members, less than the 50 percent required by Cap Fund's operating agreement.

B. *Procedural History*

In March 2017, Wynfield, purporting to be Cap Fund's "liquidating trustee," filed the underlying action. The complaint sought damages on Cap Fund's behalf against appellants and other related entities for alleged breach of fiduciary duty arising from their role as Cap Fund

_____

[2] Notably, previous efforts by Weiss and Wynfield to be appointed Cap Fund's liquidating trustees were denied by the United States District Court for the Southern District of California in *Weiss et al. v. NNN Capital Fund, LLC, et al.* (No. 14-cv-02689-H-NLS) and in Orange County Superior Court in *Weiss v. NNN Capital Fund I, LLC* (No. 30-2015-00818459). Weiss subsequently dismissed both actions in 2016.

managers and submanagers. The complaint also contended that appellants' liquidation of Cap Fund's assets was fraudulent. In September 2018, the trial court ordered the case to arbitration.

On January 5, 2021, with Saul now purportedly acting as "liquidating trustee," Cap Fund initiated arbitration. On March 16, 2022, appellants filed a motion to dismiss the arbitration proceedings based in part on lack of standing.

In 2023, in an apparent attempt to correct the standing defects raised by appellants in arbitration, respondent's counsel purported to conduct a ratification vote. Respondent's counsel claimed Saul obtained the votes of 51.6 percent of Cap Fund's ownership interests. However, this ratification vote, like the two previous purported votes, apparently included the votes of transferee members not qualified by the terms of the operating agreement to vote on company matters. When non-qualified votes were removed, Saul allegedly received 37 percent of the qualified votes, less than the 50 percent required by the operating agreement.

In June 2023, appellants filed a renewed motion to dismiss for lack of standing based on the alleged improper elections and lack of authorized votes. The arbitrator did not hold a hearing on the motion to dismiss.

Arbitration was held in October and November 2023. On January 26, 2024, the arbitrator issued an interim award in favor of Cap Fund in the amount of $20,972,601 in compensatory and punitive damages. The arbitrator also concluded that Wynfield and Saul had standing to bring the action on Cap Fund's behalf.

On March 29, 2024, the arbitrator issued a final award, which included attorney fees and costs. On June 3, 2024, the trial court confirmed the final award.

## DISCUSSION

### I.

### JUDICIAL NOTICE

*A. Appellants' Request for Judicial Notice*

Appellants filed a request for judicial notice of documents which were either filed in the arbitration or presented as exhibits. Appellants argue these documents are necessary to this court's determination of whether the trial court and arbitrator lacked jurisdiction. Respondent filed an opposition to the request for judicial notice.

We grant appellants' request for judicial notice of the documents in its appendix. First, these documents are subject to judicial notice under Evidence Code section 452, subdivision (d) because they were filed or entered as exhibits in the arbitration. Second, they may also be judicially noticed pursuant to subdivision (h) as facts "not reasonably subject to dispute" which are "capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." (See *Brown v. TGS Management Co., LLC* (2020) 57 Cal.App.5th 303, 308, fn. 2 [citing Evidence Code section 452, subdivisions (d) and (h) in granting request for judicial notice of arbitration transcripts]; *Greenspan v. LADT LLC* (2010) 191 Cal.App.4th 486, 525 ["trial court properly took judicial notice of" documents from underlying arbitration proceeding].)

We are unpersuaded by respondent's argument that these documents are not subject to judicial notice because they were not filed in the trial court. A court must judicially notice the extent and limits of its own

jurisdiction and may, *at any time*, take judicial notice of facts necessary to determine its jurisdiction. (See, e.g., *Apple, Inc. v. Franchise Tax Bd.* (2011) 199 Cal.App.4th 1, 14, fn. 17 [appellate court took judicial notice of documents related to administrative proceedings to determine whether party had standing to appeal]; see also *In re Christian H.* (2015) 238 Cal.App.4th 1085, 1091 [appellate court took judicial notice of letter brief consenting to jurisdiction of state court to determine custody and placement of refugee where necessary in determining whether case was moot].)

B. *Respondent's Request for Judicial Notice*

We also grant respondent's request for judicial notice of documents filed in Utah state court and in the Florida bankruptcy court. Such documents are subject to judicial notice under Evidence Code section 452, subdivision (d) as records of the courts of record of the United States or of any state of the United States. We further grant respondent's request for judicial notice of the American Arbitration Association's commercial arbitration rules, which are subject to judicial notice under Evidence Code section 452, subdivision (h).

II.

PLAINTIFFS WYNFIELD AND SAUL MAY LACK STANDING TO SUE ON BEHALF OF CAP FUND

If Wynfield and Saul were not qualified to file suit on Cap Fund's behalf, they lacked standing, and therefore neither the trial court nor the arbitrator had jurisdiction over the suit.

A. *Legal Standard*

"A litigant's standing to sue is a threshold issue to be resolved before the matter can be reached on the merits. (*Hernandez v. Atlantic Finance Co.* (1980) 105 Cal.App.3d 65, 71.) . . . We will not address the merits

9

of litigation when the plaintiff lacks standing because "'California courts have no power . . . to render advisory opinions or give declaratory relief.'" (*Municipal Court v. Superior Court (Gonzalez)* (1993) 5 Cal.4th 1126, 1132.) Standing "'goes to the existence of a cause of action.'"" (*Blumhorst v. Jewish Family Services of Los Angeles* (2005) 126 Cal.App.4th 993, 1000.)

An appellant can raise the lack of standing for the first time on appeal. A plaintiff's lack of standing is treated as a "jurisdictional" defect and is not waived by a defendant's failure to raise it by demurrer or answer. "[C]ontentions based on a lack of standing involve jurisdictional challenges and may be raised at any time in the proceeding." (*Common Cause v. Board of Supervisors of Los Angeles County* (1989) 49 Cal.3d 432, 438 [lack of standing can be raised for first time on appeal]; *Golden Eagle Land Investment, L.P. v. Rancho Santa Fe Assn.* (2018) 19 Cal.App.5th 399, 425, [same].) Standing to sue affects the right to relief and goes to the existence of a cause of action against the defendant. (*Killian v. Millard* (1991) 228 Cal.App.3d 1601, 1605.)

"Courts will decline to resolve lawsuits that do not present a justiciable controversy, and justiciability 'involves the intertwined criteria of ripeness and standing.'" (*County of San Diego v. San Diego NORML* (2008) 165 Cal.App.4th 798, 813.) "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute." (Code Civ. Proc., § 367.) "The real party in interest is generally the person who has the right to sue under the substantive law. [Citation.] 'A party who is not the real party in interest lacks standing to sue because the claim belongs to someone else.'" (*River's Side at Wash. Square Homeowners Assn. v. Superior Court* (2023) 88 Cal.App.5th 1209, 1226 (*River's Side*).)

10

California courts "view standing to sue as a substantive right" and therefore apply the law where the company was incorporated. (*Vaughn v. LJ Internat., Inc.* (2009) 174 Cal.App.4th 213, 222, 226–227.) Cap Fund's operating agreement provides that Delaware law shall apply. Under Delaware law, a party must have standing to sue to invoke the jurisdiction of the court. (*El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff* (Del. 2016) 152 A.3d 1248, 1256.)

Both standing and the interpretation of statutes are questions of law to which we typically apply a de novo standard of review. (*Fry v. City of Los Angeles* (2016) 245 Cal.App.4th 539, 548–549; *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799–801.) However, where the superior court makes underlying factual findings relevant to the question of standing, we defer to the superior court and review the findings for substantial evidence. (*Fry*, *supra*, at p. 549.) Where the facts related to standing are not in dispute, we decide the issue de novo as a matter of law. (*San Luis Rey Racing, Inc. v. California Horse Racing Bd.* (2017) 15 Cal.App.5th 67, 74; *Babbitt v. Superior Court* (2016) 246 Cal.App.4th 1135, 1143.)

B.  Discussion

Appellants contend that neither Wynfield nor Saul were properly elected as "liquidating trustees" authorized to sue on Cap Fund's behalf. First, the explicit terms of the ballots sent to members stated that the vote was to seek *appointment by the court* of liquidating trustees. However, Wynfield and Saul never obtained court approval before declaring themselves "liquidating trustees." Second, if Wynfield and Saul were not elected by a majority of the members qualified to vote per the terms of the operating agreement, any such vote was invalid.

Respondent fails to directly address appellants' contention that Wynfield and Saul relied on ballots which were invalid under the terms of the company's operating agreement and therefore were not properly elected liquidating trustees. Respondent instead makes two arguments, both of which we find unconvincing. First, respondent argues that, even if Wynfield's initial appointment was improper, any error was cured by the later votes approving Wynfield's and Saul's appointments. As noted, these later votes appear to suffer from the same deficiencies as the first vote, namely that they counted all the ballots returned, including those that were not qualified to vote per the terms of Cap Fund's operating agreement.

Second, respondent contends that Wynfield and Saul were authorized to act as liquidating trustees because the company lacked a manager at the time. Respondent relies on the assignment for benefit of creditors initiated by former manager NNNRI to claim that the manager had "resigned" within the meaning of section 8.1 of Cap Fund's operating agreement. However, it appears that a majority of Cap Fund's members authorized to vote had voted on an amendment to the operating agreement to replace NNNRI as manager with SCMG when they approved the sale of the Notes to SSMF. No action was taken to revoke the amendment or to remove SCMG as manager. Therefore, it seems there was an authorized manager in place at the time Wynfield and Saul sought to be appointed as liquidating trustees.

Cap Fund's operating agreement does not authorize any individual member to file an action on the company's behalf, but instead specifically vests this authority in the company's manager. Section 6.3.19 of Cap Fund's operating agreement provides that the manager shall have the exclusive authority to "[i]nitiate, settle and defend legal actions on behalf of

12

the Company including any such actions with respect to Investments." Section 7.1 of the operating agreement states, "[T]he management of the company is vested exclusively in the Manager. No Member, acting solely in the capacity of a Member, is an agent of the Company nor can any Member in such capacity bind or execute any instrument on behalf of the Company." Thus, at the time Wynfield claimed to be elected as liquidating trustee, SCMG, as manager, appears to have possessed sole authority to litigate on Cap Fund's behalf.

Additionally, neither Wynfield nor Saul, as individual members of the limited liability company, had standing to sue for any alleged injury to Cap Fund. In determining whether an individual action as opposed to a derivative action lies, a court looks at "the gravamen of the wrong alleged in the pleadings." (*Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 124 (*Nelson*).) As noted, the gravamen of the complaint was injury to Cap Fund caused by alleged fraudulent transfer of its assets by appellants, who purportedly breached their fiduciary duty as the company's managers and submanagers.

Claims for injury or damage to a corporation or its property belong to the corporation, not its stockholders, who have no standing to sue for such wrongs. (*Jones v. H.F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 107 (*Jones*).) "Because all of the acts alleged to have caused [plaintiff's] injury amount to alleged misfeasance or negligence in managing the corporation's business . . . any obligations so violated were duties owed directly and immediately to the corporation." (*Nelson*, *supra*, 72 Cal.App.4th at p. 125.) Therefore, "it was for the corporation to institute and maintain a remedial action." (*Id.* at p. 126.) Similarly, a member of a limited liability company cannot sue individually for alleged fraudulent transfer of the company's assets because the entity is the real party in interest. (*PacLink*

*Communications Int'l, Inc. v. Superior Court* (2001) 90 Cal.App.4th 958, 964–965 (*PacLink*).)

Accordingly, the trial court must make a factual determination on remand and resolve whether Wynfield and/or Saul had standing to file suit on Cap Fund's behalf. If the court determines Wynfield and Saul lacked standing, and no authorized representative of the company may be substituted, the court would lack jurisdiction to adjudicate the case. (*River's Side*, *supra*, 88 Cal.App.5th at p. 1239 [where party lacks standing to sue, action is subject to dismissal].) A lack of subject matter jurisdiction would similarly prevent the court from adjudicating any motion to compel arbitration. (See *Cohen v. TNP 2008 Participating Notes Program, LLC* (2019) 31 Cal.App.5th 840, 857 [court vacated order granting petition to compel arbitration of claims brought by party lacking standing].)

"When a court lacks fundamental jurisdiction, its ruling is void" (*People v. Chavez* (2018) 4 Cal.5th 771, 780), and the action must be dismissed. (*Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 1004; *Saffer v. JP Morgan Chase Bank, N.A.* (2014) 225 Cal.App.4th 1239, 1243 [court vacated judgment arising from arbitration award where trial court lacked jurisdiction].)

III.

AN ARBITRATION AWARD IS REVIEWABLE IN CERTAIN CIRCUMSTANCES

Respondent argues the arbitration award must be affirmed because such an award is generally not reviewable on appeal, citing *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1. We agree with respondent that *Moncharsh* concluded that there is limited judicial review of arbitration decisions. *Moncharsh* determined that a court may not review the merits of the controversy, the validity of the arbitrator's reasoning, or the sufficiency of

14

the evidence. (*Id.* at p. 11.) Indeed, an arbitrator's decision is not generally reviewable for errors of fact or law, even if the error appears on the face of the award and causes substantial injustice. (*Id.* at p. 6.)

However, as the Supreme Court noted in *Moncharsh*, an arbitration award is subject to judicial review "on the grounds set forth in [Code of Civil Procedure] sections 1286.2 (to vacate) and 1286.6 (for correction)." (*Id.* at p. 33.) Code of Civil Procedure section 1286.2 sets forth the bases on which a court "shall" vacate an arbitration award, including if it determines "the arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (*Id.,* at subd. (a)(4).) An arbitrator exceeds his powers when he acts without subject matter jurisdiction. (*National Union Fire Ins. Co. v. Stites Prof. Law Corp.* (1991) 235 Cal.App.3d 1718, 1724.) In *National Union*, the appellate court set aside an arbitration award on the ground that the arbitrator lacked jurisdiction over the dispute, concluding the arbitrator's factual finding that he had jurisdiction was not binding on the trial court. (*Ibid.*) Therefore, if the arbitrator here did not have subject matter jurisdiction due to the liquidating trustees' lack of standing, the arbitration award is subject to vacation pursuant to Code of Civil Procedure section 1286.2.

Respondent also argues that appellants may not challenge the arbitrator's authority to decide the dispute because they failed to raise the issue in the trial court. However, appellants' failure to challenge the arbitrator's authority in the trial court does not waive the issue. (See, e.g., *Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, 453 [appellant did not waive argument arbitrators lacked authority to exceed capped monetary award by failing to raise the issue in arbitration].) Thus, it

15

is an issue for the trial court, not the arbitrator, to determine whether there is standing. (See *Bouton v. USAA Casualty Ins. Co.* (2008) 167 Cal.App.4th 412, 425 ["The preliminary determination of standing to arbitrate as a party to the arbitration agreement is a question for the trial court."].)

## DISPOSITION

The judgment in respondent's favor is vacated. The matter is remanded with directions for the trial court to: (1) vacate its order compelling arbitration; (2) vacate its order confirming the arbitration award; and (3) make factual findings regarding whether Tyrone Wynfield and/or Mary Jo Saul had standing to bring the action on respondent's behalf. If Wynfield and Saul lacked standing and no other plaintiff may be substituted, the court shall dismiss the action. If the court finds Wynfield and/or Saul have standing, or that another plaintiff may be substituted, the court shall reinstate the order compelling arbitration, the order confirming the arbitration award, and the judgment. Appellants are entitled to recover their costs on appeal.


SANCHEZ, J.

I CONCUR:


MOORE, ACTING P. J.

16

**BANCROFT, J., pro tem.,** Dissenting.

I respectfully dissent.

The majority's opinion would vacate a judgment after a final, binding arbitration award based on the aggrieved party's *contention* that the other party did not have standing. The practical result of the majority's decision will be to require the trial court to conduct an evidentiary hearing on the plaintiff's standing in every case before ordering the matter to arbitration on the defendant's request. This is neither practical nor legally required. When a jury or court sitting as a finder of fact determines after trial that one party to the proceeding lacked standing, the court's interim orders are not subject to be vacated because it did not determine the parties' standing at the outset of the case. The result should be no different when the matter has been sent to contractual arbitration at the request of the party who now seeks a second bite at the apple.

Taken to its logical conclusion, the rule announced by the majority today would permit an unhappy party to challenge any judgment (whether the result of a jury trial, a bench trial, or a dispositive motion) based on a bare contention of lack of standing, on the ground that the court never had jurisdiction over the matter in the first place. No authority supports this attack on the finality of judgments, or of binding arbitration awards to which the parties agreed.

Defendants and appellants Todd A. Mikles, SCMG Liquidation, LLC (SCMG), and SSMF Liquidation, LLC (SSMF) (collectively Appellants) each filed demurrers to the original, first amended, and second amended complaints filed by plaintiff and respondent NNN Capital Fund I, LLC (Cap Fund); the issue of standing was never raised in any of those demurrers. After Cap Fund filed a third amended complaint, Mikles and another

1

defendant filed a motion to compel arbitration; SCMG, SSMF, and two other defendants filed a joinder in that motion.

A trial court must order a matter to arbitration if it "determines that an agreement to arbitrate the controversy exists," unless it makes other findings that no party contends are at issue in this case. (Code Civ. Proc., § 1281.2.) Specifically, the statute provides: "If the court determines that a written agreement to arbitrate a controversy exists, an order to arbitrate that controversy *may not be refused on the ground that the petitioner's contentions lack substantive merit.*" (*Ibid.*, italics added.) The trial court properly granted the motion to compel arbitration *requested by Appellants*.

The arbitration provision in this case provides that "*[a]ny controversy arising out of or related to this Agreement or the breach thereof* or an investment in the Interests shall be settled by arbitration in Orange County California, in accordance with the rules of the American Arbitration Association (the 'AAA'), and judgment entered upon the award rendered may be enforced by appropriate judicial action." (Italics added.) This broad language gave the arbitrator the jurisdiction to consider and decide all issues between the parties, including but not limited to the issue of the parties' standing. The issue of standing was addressed in the arbitration proceeding, and the arbitrator made factual findings as to standing in the arbitration award.

Cap Fund filed a petition to confirm the arbitration award. Appellants did not file an opposition to the petition and did not file their own motion to correct or vacate the arbitration award.[1] The trial court granted the unopposed petition to confirm and entered judgment thereafter.

_____

[1] A petition to vacate an arbitration award, or a response to a petition to confirm requesting the award be vacated must be served and filed

2

Appellants argue on appeal that certain individuals lacked standing to represent Cap Fund in the case. The majority holds that, because lack of standing is a jurisdictional defect and lack of jurisdiction may be raised for the first time on appeal, this court has the authority to reverse the judgment and remand the matter to the trial court to make factual findings in the first instance.

This conclusion fails to take into account that jurisdiction was *not raised for the first time on appeal*. To the contrary, the issue was raised, argued, and decided in the arbitration by the duly appointed arbitrator. Under the clear rule enunciated by our Supreme Court in *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, standing is a factual matter to be decided by the arbitrator and is not subject to judicial review. "[I]t is within the 'powers' of the arbitrator to resolve the entire 'merits' of the 'controversy submitted' by the parties. [Citations.] Obviously, the 'merits' include all the contested issues of law and fact submitted to the arbitrator for decision. The arbitrator's resolution of these issues is what the parties bargained for in the arbitration agreement. Moncharsh does not argue that the arbitrator's award strayed beyond the scope of the parties' agreement by resolving issues the parties did not agree to arbitrate. The agreement to arbitrate encompassed '[a]ny dispute arising out of' the employment contract." (*Id.* at p. 28.) "We

within 100 days after a signed copy of the award is served. (Code Civ. Proc., §§ 1288, 1288.2.) An issue that would have supported a petition to vacate may not be raised on appeal if a timely challenge to the arbitration award is not made in the trial court. (See *Louise Gardens of Encino Homeowners' Assn., Inc. v. Truck Ins. Exchange, Inc.* (2000) 82 Cal.App.4th 648; *Knass v. Blue Cross of California* (1991) 228 Cal.App.3d 390.) Although the record in this case spans more than 6,300 pages, along with an additional 5,000 plus pages of documents attached to the requests for judicial notice, a proof of service on a copy of the arbitrator's award cannot be easily located.

3

conclude that an award reached by an arbitrator pursuant to a contractual agreement to arbitrate is not subject to judicial review except on the grounds set forth in [Code of Civil Procedure] sections 1286.2 (to vacate) and 1286.6 (for correction). Further, the existence of an error of law apparent on the face of the award that causes substantial injustice does not provide grounds for judicial review." (*Id.* at p. 33.)

The majority cites *Cohen v. TNP 2008 Participating Notes Program, LLC* (2019) 31 Cal.App.5th 840 in support of its conclusion the trial court here lacked jurisdiction to grant the original motion to compel arbitration *filed by the parties who now claim the trial court lacked jurisdiction to do so*. I would not read *Cohen* so broadly. The specific issue that case decided was whether the agent of a party to an arbitration agreement had standing to compel arbitration of his personal claims against the other party. (*Id.* at p. 857.) No case, published or unpublished, has extended *Cohen* beyond this point, and I would not do so here. I would rather conclude the trial court had jurisdiction to consider and rule on the motion to compel arbitration in the first instance, without determining whether the individuals had standing to represent Cap Fund.

I would also conclude the arbitrator had the jurisdiction to consider the issue of standing. *National Union Fire Ins. Co. v. Stites Prof. Law Corp.* (1991) 235 Cal.App.3d 1718, 1724, on which the majority relies for the proposition that an arbitrator exceeds his power when he acts without subject matter jurisdiction is not on point. As the court explained in *Douglass v. Serenivision, Inc.* (2018) 20 Cal.App.5th 376, 385: "[T]he subject matter jurisdiction *of an arbitrator* is purely a product of contract [citation], which by definition turns on the parties' mutual *consent* [citation]. To say that an arbitrator's subject matter jurisdiction 'cannot be conferred by consent' is

4

accordingly incorrect. [Citation.] *National Union's* language makes sense when it is read in context, as *National Union* was addressing the scope of an arbitrator's jurisdiction fixed by a statute (there, Bus. & Prof. Code, § 6200 et seq.) [citation]; but to the extent that language is read out of context to say that an arbitrator's subject matter jurisdiction cannot be enlarged by consent when that jurisdiction is *solely* a matter of contract, we disagree with *National Union.*" In this case, the operating agreement's arbitration provision gave the arbitrator the broadest possible jurisdiction. *National Union* is inapplicable here.

I do not find the majority's citation to *Bouton v. USAA Casualty Ins. Co.* (2008) 167 Cal.App.4th 412 convincing, as the court in that case was considering whether a party had standing under the terms of an arbitration agreement to participate in the arbitration. That is a matter of contract interpretation and does not address the issue presented here.

The trial court could only vacate the arbitration award if (1) Appellants filed and served a petition to vacate the award or an opposition to the petition to confirm (Code Civ. Proc., § 1286.4, subd. (a)), and (2) the trial court determined the arbitrator exceeded his power "and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted" (*id.*, § 1286.2, subd. (a)(4)).[2] There is no dispute that the first requirement was not met. As explained *ante*, I do not believe the arbitrator exceeded his power to determine the parties' standing, so the second requirement was not met either. The trial court did not err in

---

[2] Code of Civil Procedure section 1286.2, subdivision (a), sets forth the six grounds on which an arbitration award may be vacated by the trial court. Subdivision (a)(4) is the ground on which the majority relies, and the only one arguably applicable.

confirming the arbitration award and entering judgment thereon. It had no obligation to sua sponte consider standing, much less conduct an evidentiary hearing on that issue.

As to appellants' request for judicial notice, I would grant the request under Evidence Code sections 452, subdivision (d), and 459. I would not grant the request under section 452, subdivision (h). Almost by definition, arbitration claims and briefs, declarations and exhibits attached thereto, and arbitration awards are not "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." (*Id.*, subd. (h).) Of course, this court should not take judicial notice of the truth of any factual assertions in any of the exhibits. (*Sandoval v. Pali Institute, Inc.* (2025) 113 Cal.App.5th 616, 627, fn. 2.)

BANCROFT, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

6

Filed 4/16/2026

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NNN CAPITAL FUND I, LLC, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> TODD A. MIKLES et al., <br><br> Defendants and Appellants. | G064487 <br><br> (Super. Ct. No. 30-2017-00910991) <br><br> O R D E R |

Respondent has requested that our opinion, filed on March 20, 2026, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

The opinion is ordered published in the Official Reports.

SANCHEZ, J.

WE CONCUR:

MOORE, ACTING P. J.

BANCROFT, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.